(No. 35499.—

First National Bank and Trust Company of Rockford *et al.,* Appellants, *vs.* Illinois National Bank and Trust Company of Rockford, Exr., *et al.,* Appellees.

*Opinion filed May 18, 1960.*

Downey, Layng & Anderson, of Rockford, (Jerome J. Downey, and John B. Anderson, of counsel,) for appellants.

Collis M. Hennelly, of Rockford, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

One of three joint tenants died, and the issue in this case is whether the two survivors hold title to the real estate subject to a resulting trust in favor of the devisees of their deceased cotenant.

On September 18, 1950, a 31-acre farm outside of Rockford was conveyed to Frances E. Mallicoat, a widow, her daughter, Mildred J. Heffner, and her daughter's husband, Clayton H. Heffner, "as joint tenants and not as tenants in common." Frances Mallicoat died on November 9, 1958. Her will, executed in October of 1958, directed her executor to pay funeral expenses and debts, "and to reimburse my daughter, Mildred Heffner, for any monies paid out by her in connection with my illness." It also directed that her personal property be distributed equally among her three children, Mildred Heffner, Earl Mallicoat and Helen Stoecklin.

Article III of the will provided: "I direct that my real property, held in joint tenancy with my daughter Mildred

and her husband, be sold. It is the understanding with my daughter Mildred and her husband that the holding of said property has been for the sake of convenience and to avoid unnecessary costs. From the sale of said property I first direct that the sum of Three Thousand Dollars ($3,000.00) be paid to my daughter Mildred for monies previously advanced by her in connection with the acquisition of said property by me. I direct that the balance of said sum shall be divided in the following proportions: two (2) shares to my son Earl; two (2) shares to my daughter Mildred; and one (1) share to my daughter Helen."

On November 29, 1958, the Heffners conveyed the property by a deed in trust to the First National Bank and Trust Company of Rockford under a trust agreement for their own benefit. On December 3, 1958, the Illinois National Bank and Trust Company of Rockford, as successor executor, offered the will for probate. Thereafter the First National Bank instituted this action, to remove a cloud on the title to the farm, against the Illinois National Bank, Earl Mallicoat and Helen Stoecklin, alleging that the defendants claimed an interest in the property hostile to the title of the plaintiff.

The defendants counterclaimed, naming the plaintiff and Clayton and Mildred Heffner as counterdefendants. The countercomplaint alleged that Mrs. Mallicoat had paid the entire consideration for the property, that she had borrowed $2,000 from Mildred Heffner at the time the property was purchased and had repaid a portion of that sum before her death. The countercomplaint also contained allegations of undue influence on the part of Mildred Heffner. It alleged that the sole equitable and beneficial interest in the farm was in Mrs. Mallicoat, and it prayed for the declaration of a resulting or constructive trust for the benefit of her heirs-at-law.

The decree of the trial court dismissed the complaint for want of equity. It found that the property was pur-

chased with Mrs. Mallicoat's money and that Mildred and Clayton Heffner paid no consideration and had no interest in the property. It found further that the property was placed in joint tenancy in order to obtain a mortgage to finance the purchase because of the age and income of Mrs. Mallicoat, and that the Heffners had "advanced certain money to Frances Mallicoat as a loan * * * and that there is due to Mildred J. and Clayton H. Heffner, under the terms of the will of Frances Mallicoat the sum of $3000." The decree found that a resulting trust existed for the benefit of the devisees named in Mrs. Mallicoat's will, and ordered the First National Bank to convey the property to the Illinois National Bank, as executor, for sale and distribution according to the terms of the will. A freehold is involved, and the plaintiffs have appealed directly to this court.

No evidence was offered to support the allegations concerning a constructive trust. The claim of a resulting trust is based upon the theory that Mrs. Mallicoat paid the entire purchase price, but that for reasons of convenience title was taken in joint tenancy with her daughter and son-in-law. A resulting trust is based upon the presumed intention of the parties distilled from their conduct; it comes into being at the instant the title vests, or not at all. (*Hanley* v. *Hanley,* 14 Ill.2d 566; *Tuntland* v. *Haugen,* 399 Ill. 595.) "The burden of proof rests upon the party seeking to establish such trust, and the evidence, to be effective for this purpose, must be clear, convincing, unequivocal and unmistakable, and if doubtful or capable of reasonable explanation upon any theory other than the existence of the trust it is insufficient. *Kohlhaas* v. *Smith,* 408 Ill. 535; *Dean* v. *Dean,* 401 Ill. 406; *Hille* v. *Barnes,* 399 Ill. 252; *Houdek* v. *Ehrenberger,* 397 Ill. 62." *Paluszek* v. *Wohlrab,* 1 Ill.2d 363, 366.

It is our opinion that the proof in this case does not meet the required standard. Title to the property was con-

veyed to Mrs. Mallicoat and the Heffners as joint tenants by a deed regular upon its face. In addition, the purchase was financed in part by a note and mortgage in the sum of $6,500, executed by each of the three grantees contemporaneously with the delivery of the deed to them.

The testimony of the distinterested witnesses who participated in the transaction indicates that the parties intended to purchase the property jointly. Fred Vehmeier, a real-estate broker, was called as a witness by the defendants. He testified that he went to the Central National Bank of Rockford and helped to arrange the $6,500 loan at Mrs. Mallicoat's request; that there was no question about her credit and that he understood, and so told the bank officials, that it was to be a joint tenancy and that Mrs. Mallicoat and the Heffners would sign the mortgage. He also testified that he heard Mrs. Mallicoat say "that they were buying it together as a joint tenants proposition." Another witness for the defendants, Arthur Johnson, vice-president of the Central National Bank, was asked whether he had any conversation with Mrs. Mallicoat about the manner in which the title was to be taken. He replied, "I think that was done at the outset, * * * that she and other relatives were purchasing—making the purchase of a farm." He also testified that there was no difficulty with his bank in financing the purchase.

Clayton Heffner testified that the purchase price of the farm was $15,000, and that of this amount $6,500 represented the proceeds of the mortgage, $5,500 was paid by Mrs. Mallicoat, $1,000 by Mildred Heffner and $2,000 by him. At the trial he testified that he withdrew $500 from his savings account on the day of the purchase and that the other $1,500 was money obtained from the sale of real estate which he had owned and that on the day of the purchase he removed the money from a box buried in a hole in his garage and took it to the bank. Earlier, at a pretrial deposition, he had testified that he withdrew the entire

sum of $2,000 from the bank. With respect to this discrepancy in his testimony, he stated that at this time his deposition was taken he thought that it was none of the defendants' business where he obtained the money. His bank records showed that $500 was withdrawn on the day of the purchase, and $325 was deposited on the same day. Mrs. Heffner had been employed before the farm was purchased and was continuously employed thereafter. She testified that she furnished $1,000 of the purchase price but that the amount might have been something less than $1,000. Both of the Heffners denied that they loaned any money to Mrs. Mallicoat at the time of the purchase and both testified that their money was furnished to acquire ownership of the farm as joint tenants.

The testimony of the Heffners is not completely satisfactory as to the exact amount of money that they advanced. But that they advanced a substantial portion of the total cash paid can not be doubted, for their testimony is corroborated by the will of Mrs. Mallicoat, from which it appears that they advanced either $3,000 or a sum which, with interest over the intervening years, would amount to $3,000.

In addition to the evidence relating to the purchase of the farm, evidence was received as to the subsequent conduct of the parties. Mrs. Mallicoat moved at once upon the farm, and lived there until her death. Insurance policies were issued in her name alone, and her income tax returns included the farm property. She paid the annual taxes on the farm, and she made all the payments on the mortgage, which was released on July 1, 1957. Two tenants farmed the tillable portion of the farm during the period from 1950 to 1958. One of them, who became a tenant in 1957, had a written lease, executed by Mrs. Mallicoat alone, but he testified that it was Heffner who first spoke to him about farming the 30 acres. The other had no written lease. He testified that he "worked the land" for Mrs.

Mallicoat. When he was asked whether over the years he had dealt with anyone else, he answered, "I dealt with her mostly."

On the other hand, there is no evidence that Mrs. Mallicoat ever paid any interest to the Heffners. Both of them worked assiduously in connection with the operation of the farm. They fed two or three steers at a time and raised pigs, all of which were bought by Heffner. He testified that he made some of the payments on the mortgage "in a round about way," because the money received from the sale of the livestock was turned over to Mrs. Mallicoat and used for mortgage payments. He moved a chicken house from another property that he owned to the farm. He purchased a small tractor for $500 which was used on the farm. On at least one occasion, Heffner purchased seed to be used by the farm tenant. Mrs. Heffner, who was at the farm daily throughout the period, took care of the chickens and cleaned the chicken house. There was no year in which the income tax returns showed a profit from the farm, and while Mrs. Mallicoat was employed, until 1956, she received a refund each year from the taxes withheld on her earnings on account of the loss that resulted from the operation of the farm.

Certain statements of Mrs. Heffner are relied upon as admissions that she had loaned money to her mother and had not participated in the purchase of the farm. When the will was read in the presence of her brother and sister and their lawyer, she was asked how much money her mother owed her. She answered, "$2000." The defendants interpret this statement as an admission that she had loaned her mother $2,000 when the farm was bought, and had advanced nothing by way of purchasing an interest in the farm. This interpretation, however, appears unlikely. The mother's will, which had just been read, referred to reimbursement of Mrs. Heffner for moneys she paid in connection with her mother's illness, as well as to the farm trans-

action. Two thousand dollars is the amount which Mrs. Heffner borrowed in order to pay her mother's medical and hospital expenses.

The other asserted admission occurred at the same time. After the will was read, and as Mrs. Heffner was leaving with her brother and sister and their lawyer, her brother asked whether the proceeds of the sale of the farm could be divided so that each of the heirs would receive one third. It was testified that Mrs. Heffner replied, "No, Mom wanted to give you two fifths and me two fifths and one fifth to our sister, and that's the way it will be." From this statement, which indicated a willingness to abide by her mother's wishes, we are asked to infer the nature of a transaction that had occurred eight years before. Even if the suggested inference should be drawn, it would hardly furnish the clear and unequivocal proof that the law demands. But we think that under the circumstances of this case the inference should be rejected. The record shows that Mrs. Heffner was emotionally upset throughout the meeting. Her husband was not present, and her brother and sister had brought their lawyer with them to hear the will read. Her purchase of a burial plot had been criticized, and she had been particularly hurt by her brother's observation that she would soon forget her mother.

The defendants rely upon the statement in Mrs. Mallicoat's will that "It is the understanding with my daughter Mildred and her husband that the holding of said property has been for the sake of convenience and to avoid unnecessary costs." That part of the will which acknowledged that the Heffners had advanced a substantial sum of money in connection with the purchase of the property is a declaration against interest, and we have so regarded it. But that part of the will which sought to characterize the transaction as a loan stands upon a different footing. It is self-serving, and, more important, it is unsworn and not subject to cross-examination. Its hearsay characteristics would raise serious

questions as to its admissibility over appropriate objection, (see McCormick on Evidence, sec. 256,) and while there was no objection in this case, those characteristics which would bear upon its admissibility also affect its weight.

There is no written evidence that any money was borrowed by Mrs. Mallicoat from the Heffners in connection with the purchase. No interest was paid by her, and nothing in the record suggests that she ever recognized such an indebtedness during her lifetime. The proposition that the money furnished by the Heffners was advanced as a loan is contradicted by the terms of the deed by which title was taken and by the fact that the Heffners became liable as mortgagors. The subsequent conduct of the parties is at most equivocal. The self-serving statement of the testatrix is not sufficient to meet the required burden of proof. Since the record does not support the asserted resulting trust, the decree must be reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the complaint.

*Reversed and remanded, with directions.*