(No. 41032.—

WILLIAM J. SUWALSKI, Appellant, *vs.* ARTHUR J. SUWAL-SKI, Appellee.

*Opinion filed September 24, 1968.*

STANLEY WERDELL, of Chicago, for appellant.

BASIL N. PYSHOR and EDWARD L. STEPNOWSKI, both of Chicago, for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

The circuit court of Cook County on December 1, 1965, entered a decree imposing a trust in favor of the appellant, William J. Suwalski, on title to property at 5954 West Eastwood, Chicago. Appellee, Arthur J. Suwalski, appealed to the Appellate Court for the First District contending that the decree of the trial court was against the manifest weight of the evidence and that the master's fees allowed were excessive and should have been taxed against the corpus of the estate. The appellate court affirmed the decision of the trial court but, subsequently, granted a rehearing and on reconsideration reversed the decree of the trial court. (88 Ill. App. 2d 419.) We have granted appellant's petition for leave to appeal.

The facts are substantially not in dispute. The appellant and his wife (now deceased) undertook to purchase a house

in August, 1950, the purchase price of which was to be $15,500. They were prepared to pay $4,500 of their own funds and anticipated obtaining the remaining $11,000 from the Community Savings and Loan Association through a mortgage of the property. The association, however, informed the appellant that because of his advanced age it could give him and his wife a loan for only $9,500 and would require a cosigner on the note. Arthur J. Suwalski, the appellee and the son of the appellant and his wife, agreed to be a cosigner on the note and to furnish the additional $1500 which his parents required to acquire the house.

The appellant, his wife, and the appellee executed the appropriate real-estate contract, mortgage, and note, and on November 6, 1950, a trustee's deed was executed naming the appellant, his wife, and the appellee as joint tenants. The appellee at this time turned over his check for $1500 directly to the loan association and the attorney who then represented the appellant and his wife gave the association $301.53, which was required to complete the closing. The attorney was repaid by the appellant the following day.

The appellant, his wife, and the appellee moved into the house, but upon his marriage in 1953 the appellee left the residence. The wife of the appellant died in 1961 and he continued to occupy the house until 1963, when because of failing health he attempted to sell the premises. After he and the proposed buyers had executed a contract for the sale of the property, the appellant discovered that his son's name was included in the deed as a joint tenant. He sought to pay the appellee $1,500 and asked for a conveyance. The appellee refused and when his name was added to the proposed contract as a grantor he demanded, the master found, $10,000 from the proceeds of the contemplated sale. At this, the negotiations for sale were broken off.

In the litigation which ensued the appellant argued that it was never intended that the appellee should have a bene-

ficial interest in the house when it was purchased and that the $1,500 paid by him was merely a loan to the appellant and his wife. It is claimed a resulting trust in favor of the appellant was created by the transaction.

The appellee however, contended that he was a purchaser for value and an owner in joint tenancy. He also counterclaimed and in count 1 of the counterclaim asserted that the appellant had severed the joint tenancy in 1963 by executing what he apparently claimed was a second mortgage and that as a result the appellant and the appellee each held a one-half interest as tenants in common. In count 2 of the counterclaim, the appellee asserted that the appellant and his wife had executed a joint and mutual will and that the will was a contract, whose terms made the appellee and his sister, Virginia Badgley, equal beneficiaries of such contract, subject to a life estate in the appellant and further subject to a legacy of $1,500 which was due the appellee.

A resulting trust is created by law and arises from the presumed intention of the parties, distilled from their conduct; it comes into being at the instant the title vests or not at all. (*First National Bank and Trust Co.* v. *Illinois National Bank and Trust Co.,* 19 Ill.2d 385, 388.) As we said in *West* v. *Scott,* 6 Ill.2d 167, at 172, in describing a typical resulting trust situation: "A court of equity raises the trust when land is bought with the money of one person and title is taken in the name of another. (*Kane* v. *Johnson,* 397 Ill. 112.) It may be paid directly or indirectly to the grantor, and by or for the resulting trust claimant. (*Wright* v. *Wright,* 2 Ill.2d 246.) The burden of proof rests upon the party seeking to establish a resulting trust, and the evidence to be effective for this purpose must be clear, convincing, unequivocal and unmistakable, and must establish beyond a doubt the payment by the claimed beneficiary at the time the title was taken in the alleged trustee. *Kohlhaas* v. *Smith,* 408 Ill. 535; *Hille* v. *Barnes,* 399 Ill. 252."

The appellant to support his position that it was the intention of the parties to create a resulting trust argued, using the language of the second appellate court opinion, "that aside from the original $1,500 advanced by defendant [appellee], he has not paid any of the costs incurred in connection with the purchase of the said premises; he has not paid any of the mortgage payments on the mortgage indebtedness of $9500 and that the present balance due on that mortgage is now $724.41; he has not paid any of the taxes assessed against the premises; he has not paid for any of the repairs and improvements; he has not paid any of the water bills; he has not paid any of the insurance premiums on the premises; he has exercised no indicia of ownership or claimed any interest in the premises; he did not know until 1963 that he was in title; he has not at anytime informed the plaintiff or his mother that he has or claims any interest in said premises; that the joint last will of plaintiff [appellant] and his wife recited an indebtedness of $1,500 to the defendant. Plaintiff [appellant] also introduced testimony of Virginia Badgley, Robert Badgley and Paul Mann, corroborating his own testimony to the effect that the plaintiff [appellant] and his wife never intended to have the defendant's name in the title. And plaintiff [appellant] testified that Attorney Klonowski [then, the appellant's lawyer] did not inform him and that plaintiff [appellant] did not know defendant [appellee] was in title until 1963." 88 Ill. App. 2d at 423.

The appellee, contending that the $1,500 was not a loan, stated, again employing the language of the appellate court: "the application for a mortgage loan was signed by plaintiff [appellant] and defendant [appellee] only; the real estate contract was signed by all three persons; the note was signed by all three persons; the mortgage was signed by all three persons; the mortgage payment receipts recite funds received from William Suwalski, et al.; the trustee's deed named all three persons as grantees, and the fact of

joint tenancy was inserted three times; payment by defendant of the $1500 was directly to the Savings and Loan Association; that at the time execution of the land purchase documents on November 16, 1950, his parents were represented by experienced counsel. Defendant also calls attention to the plaintiff's testimony to the effect that he did not execute a note to his son, did not promise to pay the $1500 and never paid any part of the $1500 or interest thereon." 88 Ill. App. 2d at 423-4.

The master and the trial court here found that the payment of $1,500 by the appellee and the fact that his name appeared on the deed as a grantee did not make him a joint tenant, because, it was found, the intention of the parties was that the $1,500 was to be considered as a loan. On appeal the Appellate Court for the First District originally agreed with the trial court. But on rehearing that court apparently relying on the fact that the appellee had actually paid $1,500 of the purchase price directly to the Community Savings, in addition to making his credit available to effect the purchase, held he was a purchaser for value and a joint tenant. Therefore, the appellate court reversed the trial court concluding that *First National Bank and Trust Co.* v. *Illinois National Bank and Trust Co.,* 19 Ill.2d 385, resembled the facts of the present case and was controlling, and that *West* v. *Scott,* 6 Ill.2d 167, was distinguishable because here there had been an actual cash contribution by appellee.

We agree with the appellate court's first disposition of this case. As stated, a resulting trust arises by operation of law, based on the presumed intention of the parties. (*First National Bank and Trust Co.* v. *Illinois National Bank and Trust Co.,* 19 Ill.2d 385, 388; *West* v. *Scott,* 6 Ill.2d 167, 172.) This trust arises typically when land is purchased with the money of one party and title is taken by another and hence it is presumed that title is held in trust for the purchaser. (See *West* v. *Scott,* 6 Ill.2d 167; *Wright* v.

*Wright*, 2 Ill.2d 246; *Bowman* v. *Pettersen*, 410 Ill. 519.) The fact that money is paid directly to the grantor by the person taking title does not prevent a resulting trust from arising, if it is the intention of the parties that the money is paid for or on behalf of another, that is, the beneficiary. To determine whether such was intended we must look to the conduct of the parties. *First National Bank and Trust Co.* v. *Illinois National Bank and Trust Co.*, 19 Ill.2d 385, 388.

In *Wright* v. *Wright*, 2 Ill.2d 246, 253, we said: "It is recognized that the payment of money by a transferee may constitute a loan to another for whose benefit a resulting trust will be raised. 3 Scott on Trusts, sec. 448, says: 'If a person pays the purchase price for a conveyance made to himself, it would seem at first blush as if there would be no ground for imposing a resulting trust. But suppose that the payment is made not for himself but for another. Suppose that B lends money to A in order that A may purchase land from X, but B pays the purchase money directly to X and takes title in his own name. It is true that in that case the money which was advanced by B never actually belonged either legally or equitably to A. Just before B paid it over to X, the money belonged to B; just after B paid it over to X, the money belonged to X. There were not two separate transactions in which B first lent the money to A, and A subsequently paid it over to X, in which case it would have been clearly A's money which was paid to X. The courts have rightly held, however, that it is immaterial that the loan to A and payment to X constitute a single transaction. A loan may be made in other ways than by handing the money over to the borrower. It may be made by paying it to another at the borrower's request. Hence although B pays the purchase money directly to X, yet in substance it is A's money, being lent to A by B. There is therefore a resulting trust for A. B, however, having taken the title as security for the repayment of the loan to A, can-

not be compelled to convey the land to A unless and until A pays B the amount of the loan. A's equitable interest by way of resulting trust therefore is subject to B's security interest'."

The appellate court in its controlling, *i.e.,* second, opinion, was obviously influenced by the decision of this court in *First National Bank and Trust Co.* v. *Illinois National Bank and Trust Co.,* 19 Ill.2d 385. We intend no departure from principles concerning resulting trusts which we restated in that opinion, but we find factual differences of significance between that case and the matter here. In *First National Bank* "there was no question" about the credit of the principal borrower. Also in *First National,* unlike here, there was evidence that the principal borrower stated that she and others, who occupied a position similar to that of the appellee here, "were buying it [a farm] together as a joint tenants proposition." In that case the ones who contributed to the purchase of the farm had worked apparently full time on the farm and had supplied equipment which was used in the operation of the farm.

Here, as related, excepting the fact that the appellant was of advanced age and ineligible for a larger loan, there would not have been any need for the use of the appellee's credit or his money. There was a question about the appellant's credit for the full loan. The appellee made no contribution to the mortgage payment (though without corroboration he claimed a payment of $10 per week) and did not contribute to insurance premiums, real-estate taxes or water-bill payments. He did not claim or exercise any ownership rights, and the master found that the appellee did not know that he was one of the recorded owners of the property until 1963, 13 years after the transaction.

While there are some similarities of fact between *First National* and this case, the dissimiliarities, we feel, are important and controlling. Thus, we consider that the appellate court in its original opinion properly affirmed the

findings of the master, which were approved by the trial court, that it was the intention of the parties that the $1,500 was paid as a loan to the appellant and that it was not intended that the appellee was to be a beneficial owner. This court said in *Majewski v. Gallina,* 17 Ill.2d 92, 99: "the master's findings are entitled to due weight on review, and, when approved by the chancellor, a reviewing court is not justified in disturbing them unless they are manifestly against the weight of the evidence." (See also, *Horan v. Blowitz,* 13 Ill.2d 126.) Under the circumstances here we cannot say that the master's findings were against the manifest weight of the evidence.

We are also not dissuaded from our conclusion because a gift from the parents to the child might be presumed under such circumstances. The presumption is not conclusive and the evidence here is to the contrary. *Wright v. Wright,* 2 Ill.2d 246, 256; *Kartun v. Kartun,* 347 Ill. 510; *Bogert Trusts and Trustees,* § 460.

We believe that the appellate court was correct in holding that the master's fees allowed by the trial court were not excessive. Considering our conclusion that the appellate court's original judgment was correct we also agree with its holding there that the trial court did not abuse its discretion in assessing these fees against the appellee.

Accordingly, we reverse the judgment of the appellate court on rehearing and affirm the decree of the trial court in so far as it found that it was the intention of the parties that the $1,500 paid by the appellee was to be a loan to the appellant and his wife. We also affirm the trial court's allowance of master's fees and their assessment against the appellee.

The appellee's counterclaim remains unconsidered. The claim set forth in count 1 was not argued before the appellate court and that court found it to have been waived under our Rule 341(e)(7) (36 Ill.2d 138); hence we need not consider it here. We observe, however, that the contention of

the appellee concerning the execution of a joint and mutual will, as described herein, was not considered by the appellate court, because its consideration of this argument was unnecessary under the court's interpretation of the case on rehearing. Since the appellee's position has not been briefed nor argued in this court we remand the case to the appellate court to consider and determine the merits of his contention which was advanced before that court in support of count 2 of his counterclaim. If the appellate court holds that the appellee's contention is not to prevail we direct then that the appellate court affirm the decree of the circuit court of Cook County.

*Reversed and remanded to the*
*Appellate Court, with directions.*