William J. Suwalski, Plaintiff and Counter-Defendant, Appellee, v. Arthur J. Suwalski, Defendant and Counter-Plaintiff, Appellant.

Gen. No. 51,134.

First District, Second Division.

April 1, 1969.

Supplemental opinion June 17, 1969.

Basil N. Pyshos and Edward L. Stepnowski, of Chicago (Edward L. Stepnowski, of counsel), for appellant.

Stanley Werdell, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

On December 1, 1965, the Circuit Court of Cook County entered a decree imposing a trust in favor of William Suwalski on title to property in Chicago. Arthur Suwalski appealed in the Appellate Court, which court initially affirmed but subsequently reversed the trial court's decree upon a rehearing of the case. (88 Ill App2d 419, 232 NE2d 64.) The Supreme Court granted William Suwalski's petition for leave to appeal and reversed the Appellate Court's judgment on rehearing, affirming the trial court's decree insofar as it made a finding that a resulting trust had arisen in William Suwalski's favor. The decision in the Supreme Court is reported in 40 Ill2d 492, 240 NE2d 677.

In the trial court Arthur Suwalski had counterclaimed in two counts. The first count was dismissed since it was waived under Supreme Court Rule 341(e)(7). The second count had not been considered in the Appellate Court because consideration of that count was not necessary under the Appellate Court's disposition of the case on rehearing. However, since the judgment was reversed on rehearing, and since Arthur Suwalski's position had not been briefed or argued in the Supreme Court, the Su-

preme Court remanded the case to the Appellate Court for consideration of the merits of Arthur Suwalski's second count of his counterclaim. The Appellate Court was instructed that if it found that Arthur Suwalski's contention did not prevail, the decree of the Circuit Court should be affirmed.

The Supreme Court stated in its opinion that there was no dispute in the facts and set them out as follows: William Suwalski and his now deceased wife agreed to buy a home for $15,500. They were going to pay $4,500 of their own funds and pay the balance of $11,000 by a mortgage in Community Savings and Loan Association. The association, however, informed William Suwalski that because of his advanced age it could give him a loan for only $9,500, and would require a co-signer on the note. Arthur Suwalski, son of William Suwalski and his wife, agreed to co-sign the note and furnish the additional $1,500 which his parents required to acquire the house.

William Suwalski, his wife, and Arthur Suwalski executed the appropriate real estate contract, mortgage and note, and on November 6, 1950, a trustee's deed was executed naming William, his wife, and Arthur Suwalski as joint tenants. Arthur Suwalski then gave his check for $1,500 directly to the loan association, and the attorney representing William Suwalski and his wife paid the association $301.53 which was required to complete the closing. William Suwalski repaid the attorney the following day.

William, his wife, and Arthur Suwalski moved into the house, and in 1953, after his marriage, Arthur Suwalski left the home. William Suwalski's wife died in 1961, and he continued to occupy the house until 1963, when, because of failing health, he tried to sell the property. After execution of a contract for the sale, William Suwalski discovered that his son's name was included in the deed as a joint tenant. When he tried to pay his son $1,500 and asked for a conveyance, his son refused, and when

his name was added to the proposed contract as a grantor, the master found that Arthur Suwalski demanded $10,000 from the proceeds of the contemplated sale. At this point the negotiations for the sale were broken off. In the original trial William Suwalski had tendered $1,500 to Arthur Suwalski in open court. Arthur Suwalski refused the tender, and thereupon, by leave of the court, the said $1,500 was deposited with the clerk of the court.

In the ensuing litigation William Suwalski argued that it was never intended that Arthur should have a beneficial interest in the house when it was purchased, and that the $1,500 paid by Arthur was merely a loan to William and his wife. The resulting trust in favor of William was created by the transaction.

Arthur Suwalski, however, contended that he was a purchaser for value and an owner in joint tenancy. He also counterclaimed, in Count I of which he asserted that William Suwalski had severed the joint tenancy in 1963 by executing what he apparently claimed was a second mortgage, and that as a result Arthur and William each had a one-half interest as tenants in common. In Count II of the counterclaim Arthur Suwalski asserted that William and his wife had executed a joint and mutual will, and that the will was a contract, under the terms of which Arthur and his sister, Virginia Badgley, were equal beneficiaries of such contract, subject to a life estate in William Suwalski, and further subject to a legacy of $1,500 which was due Arthur.

In its opinion the Supreme Court found that a resulting trust existed in favor of William Suwalski. The Appellate Court is now to pass upon the contentions raised in Count II of Arthur Suwalski's counterclaim.

On August 15, 1957, William Suwalski and Anna K. Suwalski, his wife, made their joint will. Anna K. Suwalski died on April 25, 1961, and the will was admitted into probate. The will reads as follows:

We, WILLIAM J. SUWALSKI and ANNA K. SU-WALSKI, His Wife, of the City of Chicago, County of Cook and State of Illinois, being of sound and disposing mind and memory, do hereby MAKE, PUBLISH, and DECLARE this to be our joint Last Will and Testament.

FIRST: We give, devise and bequeath to the survivor of us the entire estate, real, personal or mixed, owned by either of us at the time of the death of either of us, to the survivor of us, for his or her own use and benefit forever.

SECOND: We hereby direct that our Executrix, hereinafter named, pay all our just debts and funeral expenses as soon after our decease as conveniently may be.

THIRD: We are indebted to our son, ARTHUR J. SUWALSKI, in the sum of One Thousand Five Hundred Dollars ($1,500.00), therefore, we give, devise and bequeath to our said son, ARTHUR J. SUWAL-SKI, the sum of One Thousand Five Hundred Dollars ($1,500.00), his heirs and assigns forever.

FOURTH: After the payment of our just debts and funeral expenses, and the above said sum of One Thousand Five Hundred Dollars ($1,500.00), all of the rest, residue and remainder of our estate, real, personal or mixed, wheresoever the same may be situated and of whatsoever the same may consist, we give, devise and bequeath to our two children, namely; ARTHUR J. SUWALSKI and VIRGINIA BADGLEY, in equal shares, share and share alike, their heirs and assigns forever.

LASTLY: We make, constitute and appoint our daughter, VIRGINIA BADGLEY, to be the Executrix of this, our Last Will and Testament, and it is our wish and we hereby direct that she be not required to give any bond or surety for the discharge of her official duty as such Executrix.

102

This was a joint will with reciprocal provisions and it was signed and sealed by both parties, which imports consideration.

In Curry v. Cotton, 356 Ill 538, 191 NE 307, at 543, the court said:

> "A will that is both joint and reciprocal is an instrument executed jointly by two or more persons with reciprocal provisions and shows on its face that the bequests are made one in consideration of the other. (Frazier v. Patterson, 243 Ill 80, 28 RCL 167.)"

The court further said at page 545:

> "The rule of law that a joint will is irrevocable without notice is particularly applicable in those instances where the joint will is that of the husband and wife. On account of the relationship of mutual trust and confidence imposed by such status, it may be presumed that the provisions made are induced by the mutual love, respect for and faith which the parties have in each other. . . .
>
> "We are of the opinion that the rule supported by reason and sound, equitable principles and more likely to prevent fraud is, that a joint will may be revocable during the joint lives of the makers upon giving notice by one testator to the other, but such will becomes irrevocable after the death of one of the makers if the survivor accepts any of the benefits made for him by such will. [Citing cases.]"

The court in Curry did not follow the theory that the fact that the will was joint and mutual raised a presumption that there was a contract between husband and wife. However, the court did hold that the contract was "clearly apparent from the four corners of the will," and the will was upheld.

In In re Estate of Edwards, 3 Ill2d 116, 120 NE2d 10, the court said at page 122:

103

"The cases involving wills which are merely mutual or reciprocal in their provisions, but not joint, generally require proof by clear and convincing evidence that they were executed as the result of a binding contract to be irrevocable. . . .

"The quest for a common denominator among these authorities discloses a tendency to favor a presumption that joint and mutual wills, particularly between husband and wife, are executed pursuant to a contract or agreement between the testators. The later decisions, however, appear reluctant to permit the presumption to be sufficient in itself but search the terminology of the will for an expression of intention on the part of the testators to stand in the stead of supporting proof."

The court in Edwards held that since the will was under seal it had been held to be of some significance as importing some consideration. The court further stated that where the will is executed pursuant to a contract, the contract becomes executed as to the deceased testator and is therefore irrevocable by the other.

In Tontz v. Heath, 20 Ill2d 286, 170 NE2d 153, a joint and mutual will was executed by husband and wife. The court said at page 291:

"The defendants contend that the evidence was insufficient to show that the will was executed pursuant to a contract between the testators. As we pointed out in Bonczkowski v. Kucharski, 13 Ill 2d 443, 453, the burden is upon the party who asserts such a contract to establish it by clear, convincing and satisfactory evidence. (Cf. Sparks, Contracts to Make Wills, p 24.) Here there is no evidence of a contract except as it appears from the terms of the will itself and from the circumstances of the testators. But we are of the opinion that the

trial court properly found that a contract existed. The testators were husband and wife who made identical reciprocal provisions for each other in a single instrument; . . ."

In Peck v. Drennan, 411 Ill 31, 103 NE2d 63, the court followed the rule laid down in Curry v. Cotton, 356 Ill 538, 191 NE 307, from which case we have already quoted. Under these decisions the will in the instant case established a contract.

In its decree the trial court in the instant case found that the joint will did not prohibit William Suwalski from conveying, encumbering, transferring or assigning the property; and further, that there was no repugnancy between the absolute devise in Article First of the joint will and Article Fourth, which directs a division of what remains of the estate upon the death of the surviving testator between the children of the testators named specifically. The court further found that the statement in the will of an indebtedness of the testators to Arthur J. Suwaski was binding.

 Whether or not it is held that the joint will, such as in the instant case, established a contract is immaterial as far as the question of irrevocability is concerned. Such a will is not revocable after the death of one of the parties.

In interpreting the will it is necessary to carefully consider the language therein. In the first section, each of the testators did give, devise and bequeath to his or her survivor the entire estate, real, personal or mixed, owned by either of them at the time of the death of either, *"to the survivor of us, for his or her own use and benefit forever."*

The fourth section of the will provides:

> "After the payment of our just debts and funeral expenses, and the above said sum of One Thousand

Five Hundred Dollars ($1,500.00), all of the rest, residue and remainder of our estate, real, personal or mixed, wheresoever the same may be situated and of whatsoever the same may consist, we give, devise and bequeath to our two children, namely; ARTHUR J. SUWALSKI and VIRGINIA BADGLEY, in equal shares, share and share alike, their heirs and assigns forever."

The first and fourth clause are not in conflict. By the first clause the testators intended that their property, real or personal, at the death of either of them, would go to the survivor. The survivor was not prohibited from selling or converting the property from personalty to realty or from realty to personalty, and it was given to him for his own use and benefit forever. The fourth section provides that after the payment of the $1,500 to Arthur Suwalski, the remainder of the estate shall go to Arthur Suwalski and Virginia Badgley, after the death of both William and Anna Suwalski.

Reading these two sections together, it is clearly apparent that the intention was that each of the testators conveyed all of his property to the survivor to use as he sees fit during his life, and that after his death the property which is remaining shall go to the two children.

In the decree in the trial court it was held that Arthur J. Suwalski holds title for the benefit of his father, William J. Suwalski, and the court ordered that within 10 days from the date of the entry of the decree, Arthur J. Suwalski and Dolores Suwalski, his wife, "shall make, execute, acknowledge and deliver a Deed conveying to William J. Suwalski, a widower, all of their right, title and interest in and to the following described property, to-wit: [description of property]." The decree further ordered that in case of failure of either of the defendants to make, execute, acknowledge and deliver such deed within the time specified, then a master in chancery of the court or the sheriff of the county is ordered, directed

and empowered to make, execute, acknowledge and deliver a master's deed to vest title to the said premises in said William J. Suwalski, a widower. It was further ordered that the clerk of the court be directed and authorized to pay forthwith the sum of $1,500 to the master in chancery, to be applied on account of the balance of his fees and charges; that the loan of $1,500 from Arthur Suwalski to William and Anna Suwalski be declared satisfied in full; and that the second amended counterclaim of Arthur Suwalski be stricken and the alleged causes of action therein set forth be dismissed.

It is the opinion of this court that the will did not in any way change the devolution of the estate; therefore, the contention of Arthur J. Suwalski cannot prevail, and in accordance with the directions of the Supreme Court of Illinois, we affirm in its entirety the decree of the Circuit Court.

Affirmed.

LYONS, P. J. and BURKE, J., concur.

### SUPPLEMENTAL OPINION

William J. Suwalski died on April 1, 1969, subsequent to the date the original opinion in this case was filed. On May 9, 1969, the joint and mutual will was admitted to probate. Letters testamentary were issued to Virginia Badgley, who qualified and is now acting as executor.

In all other respects we adhere to the original opinion.

Affirmed.