### STATE OF NEW JERSEY v.
### BUDCO QUALITY THEATERS, INC., DEFENDANT.

Camden County Court
Law Division
(Criminal)

December 9, 1977.

*Mr. Fred L. Solar,* Assistant Prosecutor, for the State of New Jersey (*Mr. Thomas J. Shusted,* Camden County Prosecutor, attorney).

*Mr. W. S. Gerald Skey* for defendant (*Messrs. Sterns, Herbert & Weinroth,* attorneys).

ROSSETTI, J. C. C. This is an appeal from defendant's municipal court conviction for exhibiting a film depicting acts of sado-masochistic abuse on an outdoor screen which was

·visible from beyond the theater audience area, in violation of *N. J. S. A.* 2A:170–25.18.

The defendant argues that the statute deprives it of rights which are protected by the First Amendment of the United States Constitution. The basis for defendant's attack is a re-·cent United States Supreme Court opinion, *Erznoznik v. City of Jacksonville,* 422 *U. S.* 205, 95 *S. Ct.* 2268, 45 *L. Ed.* 2d 125 (1975). In that case the Court held that a municipal ordinance unconstitutionally infringed on First Amendment rights where it proscribed the exhibition of any motion picture in which the human male or female bare buttocks, human female bare breasts or human bare public areas are shown on a screen visible from any public street or public place.

The New Jersey statute provides:

Whoever exhibits any motion picture in which any person is shown, depicted or revealed in any act of sexual conduct or sado-masoch-istic abuse in any outdoor theater where the screen is visible beyond ·the limits of the theater audience area, so that such motion picture may be readily seen and its content or character distinguished by normal unaided vision by a person viewing it from beyond said limits, is a disorderly person. [*N. J. S. A.* 2A:170–25.18]

It does not appear that the effect of the *Erznoznik* opinion on New Jersey's statute has ever been determined.

Defendant's attack on the statute is primarily based on the court's conclusion in *Erznoznik,* that the limited privacy interests of persons on the public streets cannot justify censorship of films being seen from such streets and other public places "where the offended viewer can readily avert his eyes." 422 *U. S.* at 212, 95 *S. Ct.* at 2274. This attack fails to recognize the State's valid concern with the exposure of children to material depicting sado-masochistic abuse.

██ It is well settled that a state can adopt more stringent controls on communicative materials available to youths than on those available to adults. *Ginsberg v. New York,* 390 *U. S.* 629, 88 *S. Ct.* 1274, 20 *L. Ed.* 2d 195 (1968). The rationale underlying this principle is that parents, who bear primary

responsibility for children's well-being, are entitled to the support of laws designed to aid discharge of that responsibility. *Id.; Report of the N. J. State Commission to Study Obscenity and Depravity in Public Media* 46 (1970). In *Ginsberg, supra,* the court upheld a New York statute which prohibited distribution of sado-masochistic material to minors. It is interesting to note that the definition of "sado-masochistic abuse" in that statute parallels *N. J. S. A.* 2A: 170–25.19. The Supreme Court's recent decision in *Ward v. Illinois,* 431 *U. S.* 767, 97 *S. Ct.* 2085, 52 *L. Ed.* 2d 738 (1977), leaves no doubt that a state may prohibit the dissemination of materials depicting sado-masochistic abuse.

New Jersey's statute bears little similarity to the municipal ordinance which was invalidated in *Erznoznik, supra.* The Supreme Court there found that the ordinance was overbroad because it was "not directed against sexually explicit nudity, nor is it otherwise limited." 422 *U. S.* at 213, 95 *S. Ct.* at 2274. Such enactments, the court feared, would bar films in which a baby's buttocks, the nude body of a war victim, bathers on a beach, scenes from a culture in which nudity is indigenous, or newsreel scenes from the opening of an art exhibit were shown. *Id.* In contrast, the New Jersey statute is narrowly drawn so as to shield from undesired public purview only those films which depict acts of sexual conduct or sado-masochistic abuse. "Sexual conduct" is defined in *N. J. S. A.* 2A:170–25.19 as "human masturbation, sexual intercourse, or any touching of the genitals, public areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals *in an act of apparent sexual stimulation or gratification"* (emphasis supplied). "Sado-masochistic abuse" is defined as "flagellation or torture by or upon a human being who is nude or clad in undergarments or in revealing or bizarre costume, or the condition of one who is nude or so clothed and is being fettered, bound, or otherwise physically restrained."

■ This court has concluded that *N. J. S. A.* 2A:170–25.18 is facially valid because it is "directed against sexually explicit nudity," is "otherwise limited," *Erznoznik, supra.,* and is "readily subject to a narrowing construction". *Dombrowski v. Pfister,* 380 *U. S.* 479, 85 *S. Ct.* 1116, 14 *L. Ed.* 2d 22 (1965).

■ Defendant also fails to recognize that this court is not bound by the Supreme Court's factual determination in *Erznoznik, supra,* that the offended viewer could readily avert his eyes. Where this issue is presented, independent factfinding is expected of a trial court. *Lehman v. City of Shaker Heights,* 418 *U. S.* 298, 95 *S. Ct.* 2714, 41 *L. Ed.* 2d 770 (1974). Based on the record made in the trial court, this court is unable to conclude that an approaching motorist, or a person returning to a vehicle parked in one of the heavily traveled lots adjoining defendant's property can, with any degree of safety, avert their eyes from defendant's 40′ x 80′ screen. Of even greater concern is the likelihood of exposure of material depicting sado-masochistic abuse to children, whose immaturity induces them to look upon the screen rather than "avoid further bombardment of their sensibilities simply by averting their eyes." *Cohen v. California,* 403 *U. S.* 15, 21, 91 *S. Ct.* 1780, 1786, 29 *L. Ed.* 2d 284 (1971).

Unlike the statute which the Supreme Court invalidated in *Butler v. Michigan,* 352 *U. S.* 380, 77 *S. Ct.* 524, 1 *L. Ed.* 2d 412 (1957), *N. J. S. A.* 2A:170–25.18 does not force the adult population of this State to see only "what is fit for children." Here, the subject matter is a movie which has been exhibited to a captive audience composed of adults and children, not a book which a merchant is prohibited from selling to willing adult customers. The New Jersey statute does not prevent an adult who is willing to pay the admission price to gain entrance to defendant's outdoor theater from viewing its movies, nor does it prevent a willing adult from viewing the movie in an outdoor theater where children can be denied admission.

Accordingly, this court concludes that *N. J. S. A.* 2A:170–25.18, which proscribes exhibition of films depicting sexually explicit nudity or sado-masochistic abuse to a captive audience, is a reasonable exercise of the police power and does not unreasonably infringe upon defendant's First Amendment right to free speech.

II

The testimony established beyond a reasonable doubt that this defendant exhibited a motion picture depicting the head of a woman, and a man who was tightening a steel ratchet around her head causing her to scream, followed by the woman being seen naked with blood pouring from the ratchet and out of her mouth. This scene was followed by one in which another woman's hand was amputated by a hacksaw and her eye was gouged out. The State's witness, a police officer, testified that he observed these scenes from the parking lots of the Atlantic Thrift Store and Pennsauken Mart and that the screen could be readily seen from various other locations including the parking lot of a nearby motor inn, a state highway and a field outside of the theater. This court is satisfied from that testimony, that other persons similarly situated could have "readily seen" the film and distinguished its content and character. The court also believes that the graphic display of sado-masochistic acts is intended and does extract an instantaneous reaction from the viewer and that such images are swiftly recognized for what they are by persons of all age groups.

Accordingly, defendant is found guilty of violating *N. J. S. A.* 2A:170–25.18 and is ordered to pay a fine of $50.00 plus $25.00 costs and $6.00 costs on appeal.