IN MATTER OF ESTATE OF JACOBS, Deceased: TILG, Personal Representative of the Estate, Appellant, v. DEPARTMENT OF REVENUE, Respondent.

Supreme Court

*No. 77–162. Argued October 8, 1979.—*
*Decided November 6, 1979.*
(Also reported in 284 N.W.2d 638.)

For the appellant there was a brief by *Douglas A. Ramstack* and *Tilg, Koch & Hayes, S.C.,* of Milwaukee, and oral argument by *Mr. Ramstack.*

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Allan P. Hubbard,* assistant attorney general, with oral argument by *John J. Glinski,* assistant attorney general.

DAY, J.   The appellant, the personal representative of the Estate of Sybil Wood Jacobs, challenges the assessment of inheritance tax imposed by the Wisconsin Depart-

ment of Revenue (hereinafter, department) in its Certificate Determining Inheritance Tax upheld by the county court.

The questions on appeal are:

1. Should assets acquired under the terms of a joint contractual will by the surviving testator be included in the estate of the surviving testator for the purpose of determining the inheritance tax?

We conclude that they should.

2. When a beneficiary of a decedent's will dies before the bequest or devise is distributed to him, what is the proper method of valuing the bequest or devise for the purpose of determining the inheritance tax due in the estate of the beneficiary?

We conclude the proper value is the clear market value of the individual assets comprising the bequest or devise at the date of the beneficiary's death.

Fred L. Jacobs and Sybil Wood Jacobs, his wife, executed a valid contractual will on January 4, 1962. Fred Jacobs died on May 28, 1971. Sybil Jacobs died on January 16, 1973, prior to the final distribution of her husband's estate.

The joint contractual will was admitted to probate in both estates. It provided that after the payment of expenses, the entire estate of the decedent was to go to the surviving spouse. Upon the death of the survivor, the unconsumed portion was to go to Orlena Goldstein, a sister of Sybil Jacobs. Sybil Jacobs did not modify the will after her husband's death, and her entire estate, including property acquired from her husband under the will, passed to Orlena Goldstein. The distribution of the assets in the Fred L. Jacobs Estate was made to the Sybil Wood Jacobs Estate on November 29, 1973.

The net taxable estate of Fred Jacobs was $115,674.25. This amount included the value of certain property held in joint tenancy which passed directly to her. When Sybil

Jacobs died, the assets remaining in the estate of her husband which were left to be distributed to her were valued at $91,015.34 by the department. These assets had appreciated substantially in value since his death. These same assets, consisting primarily of stocks and cash, had been valued at $72,905.33 at the time of his death.

The personal representative of the estate of Sybil Wood Jacobs included in the Wisconsin inheritance tax report, $72,905.33 as the value of decedent's interest in the undistributed assets of her husband's estate. This same amount was included in the federal estate tax return.

The personal representative paid $22,000.00 as a partial payment of the tax and petitioned the county court for a determination of any remaining tax, interest or penalty under sec. 72.30 (4), Stats. 1971.

1. *SHOULD ASSETS ACQUIRED UNDER THE TERMS OF A JOINT CONTRACTUAL WILL BY THE SURVIVING TESTATOR BE INCLUDED IN THE ESTATE OF THE SURVIVING TESTATOR FOR THE PURPOSE OF DETERMINING THE INHERITANCE TAX?*

The inheritance tax paid by the Estate of Fred L. Jacobs was computed on the assumption that Sybil Jacobs received all of the assets from his estate. Orlena Goldstein, the third party beneficiary of the joint contractual will, was not taxed as a transferee in the husband's estate. Sybil Jacobs was the sole named beneficiary in her husband's will. There was no restriction placed on her disposition of property acquired from him, except that the unconsumed portion of her property, as well as that acquired from her husband, was to be left to Orlena Goldstein upon Sybil Jacob's death.

It is contended by the personal representative that Sybil Jacobs received nothing more than a life estate in her husband's property. According to this view, she did not transfer any property acquired from her husband. Her life estate terminated on her death and Orlena Goldstein should have been taxed as a remainderman after the life estate in the proceedings to determine the inheritance tax in the Fred L. Jacobs Estate.

The inheritance tax is a tax on the right to receive property and the amount of the tax is determined according to the relationship of the parties, the rate, and the value of each transfer or gift from a decedent. *In Matter Of Estate Of Stevens,* 74 Wis.2d 1, 5, 245 N.W.2d 673 (1976).

The inheritance tax requires a transfer as defined by statute, and the tax is collected through the estate of the transferor. Transfer is defined in sec. 72.01(21), Stats. 1971, as "the passing of property." The property need not become part of a deceased's estate in order for it to be subject to the inheritance tax. *In Matter Of Estate Of Stevens, supra.* There was a transfer of property within the meaning of the statute to Orlena Goldstein on Sybil Jacob's death. The question is whether it was a taxable transfer in the estate of Sybil Jacobs.

The department alleges that there was a taxable transfer under sec. 72.12, Stats. 1971, either as a transfer by will, a transfer in contemplation of death or as a transfer under a power of appointment. Because we find there was a taxable transfer by will,[1] we do not determine taxability under the other two subsections.

The rights and duties of the parties entering into a joint contractual will were examined extensively in *Estate*

---

[1] "72.12. **Transfers liable.** A tax is imposed upon any transfer to any distributee in the following cases:

"(1) TRANSFER BY WILL. When the transfer is by a will . . . ."

*Of Chayka,* 47 Wis.2d 102, 176 N.W.2d 561 (1970). In that case, a husband and wife executed a joint, mutual and reciprocal will. The husband subsequently died, and a little over two years later the wife remarried. She immediately began making substantial gifts of her property to her new husband and three and one-half months after entering into her second marriage she died. The court held that a transfer ". . . by gifts *inter vivos* of a substantial portion of the property received under the joint will must be held to be violative of the agreement of the parties and as a matter of law not made in good faith." *Id.* at 106.

The court in discussing the legal effect of a joint contractual will said that the ". . . contract becomes partially executed upon the death of one of the parties to the agreement and the acceptance by the survivor of properties devised or bequeathed under the will. . . . At this point the contract becomes irrevocable, the survivor having received the consideration promised." *Id.* at 106. The will remains subject to modification or revocation. If so modified or revoked, the contract may still be enforced. *Id.* at 107. *See, also, Doyle v. Fischer,* 183 Wis. 599, 198 N.W. 763 (1924) ; *Estate Of Schultz,* 53 Wis.2d 643, 646–647, 193 N.W.2d 655 (1972).

The terms of the contract control the right of the survivor to dispose of assets acquired under a joint contractual will. It is the intent of the parties at the time that the will is entered into that governs. *Estate Of Philips,* 54 Wis.2d 296, 301, 195 N.W.2d 485 (1972).

There were no restrictions placed on the disposition of the property during the life of the survivor in the will before us. We agree with the majority of courts which have held that where a joint contractual will leaves property to the survivor in fee simple or otherwise unrestricted,

giving whatever might remain at the survivor's death to others, the survivor is allowed to make any good faith *inter vivos* disposition desired. *See, for example, Suwalski v. Suwalski,* 112 Ill. App.2d 98, 251 N.E.2d 279 (1969); *McCuen v. Harstock,* 159 N.W.2d 455 (Iowa 1968); *Lindley v. Lindley,* 67 N.M. 439, 356 P.2d 455 (1960); *Ohms v. Church Of The Nazarene,* 64 Idaho 262, 130 P. 2d 679 (1942); *Cf. Admrx. v. Chesnut's Estate,* 317 S.W. 2d 867 (Ct. App. Ky., 1958). *See, generally,* Annot. 85 A.L.R.3d 8 (1978), (including cases contra to this position).

Some courts have attempted to fit the relationship created by joint contractual wills into a variety of plans ordinarily used to dispose of property. A number of courts have considered the relationship created as one similar to a life tenancy in the survivor with a remainder in the third party beneficiaries. *See, Rubenstein v. Mueller,* 19 N.Y.2d 228, 278 N.Y.S.2d 845, 225 N.E.2d 540 (1967); *DiLorenzo v. Ciancio,* 80 Misc.2d 193, 362 N.Y.S. 2d 939 (1974); and *Estate Of David A. Siegel,* 67 T.C. 662 (1977) (construing New York law). Other cases have used the analogy of a trust created during the survivor's lifetime. *Rastetter v. Hoenninger,* 214 N.Y. 66, 74, 108 N.E. 210 (1915); *Matheson v. Gullickson,* 222 Minn. 369, 378, 24 N.W.2d 704 (1946). Unless the will provides expressly for a life estate or trust relationship, the execution of a joint contractual will does not in itself give rise to their existence.

If the parties to the joint will here had wished to create a trust or a life estate with a remainder, they could easily have done so. They chose not to. When the contract encompassed within a joint will ". . . is examined apart from any artificial attempt to attribute to it a relationship not encompassed by it, it is easy to see that it is merely a contract for the right to have the property of the promisor pass in a particular manner at his death.

The promisee acquires the equitable right to demand the property at that time." B. M. Sparks, *Contracts To Make Wills,* 109 (1956). In addition the third party beneficiary can take action to protect his right in equity. Nevertheless, this right is limited by the scope of the right granted by the contract.

Applying these principles to the present case, it can be seen that Sybil Jacobs received her husband's entire estate subject to Orlena Goldstein's right to whatever remained at her death. Sybil Jacobs was limited only by her duty of good faith. Her powers over the property acquired from her husband were extensive and were not controlled by the same standards governing trustees or life tenants. Cf., *Estate Of Larson,* 261 Wis. 206, 52 N.W. 2d 141 (1952), (duties of life tenant and trustee compared). She was contractually bound to transfer the property in a specified manner, but that fact did not affect the transfer of property to her under her husband's will. She complied with her contractual duty, and thus there was a transfer by will of the property from Sybil Jacobs to Orlena Goldstein.

The personal representative argues that a transfer in a joint contractual will is not by will but rather by contract and thus not taxable. We disagree. Although this court has not addressed the issue, other jurisdictions have concluded that when the joint contractual will is not revoked the property still passes by will even though the contract would be separately enforceable as a claim against the decedent's estate. *In Re Estate Of Alter,* 49 Ill.2d 386, 275 N.E.2d 364 (1971) ; *In Re Estate Of Murphy,* 38 Ill.2d 76, 230 N.E.2d 266 (1967) ; *Daum v. Inheritance Tax Comm.,* 135 Kan. 210, 9 P.2d 992 (1932) ; *Krug v. Douglas County,* 114 Neb. 517, 208 N.W. 665 (1926) ; *Kelly v. Glaser,* 112 N.J. Super 419, 271 A.2d 602 (1970), affirmed per curiam, 59 N.J. 355, 382 A.2d 102 (1971). We find these cases persuasive.

It makes no difference whether there was fair and adequate consideration for the contract. The statute taxes all transfers by will; it makes no exception for those made for full consideration. *See, In Re Estate Of Alter, supra; Will Of Jones,* 206 Wis. 482, 240 N.W. 186 (1931) ; *Contra, In Re Estate Of Vai,* 52 Cal. Rptr. 705, 417 P. 2d 161 (1966) (but see, Traynor, C.J. dissenting opinion) ; *See also,* cases collected in Annot. 59 AL.R.3d 969 (1974).

The department correctly included as subject to the inheritance tax the transfer by will from Sybil W. Jacobs to Orlena Goldstein of property acquired from the Estate of Fred L. Jacobs under sec. 72.12 (1), Stats.

2. *WHEN A BENEFICIARY OF A DECEDENT'S WILL DIES BEFORE THE BEQUEST OR DEVISE IS DISTRIBUTED TO HIM, WHAT IS THE PROPER METHOD OF VALUING THE BEQUEST OR DEVISE FOR THE PURPOSE OF DETERMINING THE INHERITANCE TAX DUE IN THE ESTATE OF THE BENEFICIARY?*

The department determined that the value of assets owned by Sybil Jacobs at her death included the value of property acquired by her from the estate of her husband although at the time of her death the property had not yet been distributed to her. The department calculated the value of the stocks and cash to which she was entitled as of the date of her death and used that value in issuing its Certificate Determining Inheritance Tax. The county court agreed with this assessment.

The personal representative of the estate argues that this was error. He contends that the value of the stocks and cash should have been determined as of the date that

the husband died. The value of the stocks in the husband's estate which were bequeathed to his wife appreciated substantially prior to her death and before ultimate distribution.

The resolution of the issue is found in the inheritance tax law. Sec. 72.13 (1), Stats., provides:

"72.13.    **Imposition of tax.**    (1) The tax is imposed at the prescribed rates upon the transfer of property measured by its clear market value on the date of decedent's death less enforceable liens and the deductions and exemptions provided in this subchapter. In determining the taxable value of property transferred, a deduction is allowed for the amount of an enforceable lien on the property if the distributee takes the property subject to that lien."

And property is defined as ". . . any interest, legal or equitable, present or future, in real or personal property, or income therefrom, in possession and enjoyment, trust or otherwise, within or without this state." Sec. 72.01 (19), Stats.

Any interest that the wife had in her husband's estate must be valued as of the date of her death at its clear market value. It is not relevant that she did not have full legal title at that moment. The transfer of all of her property, including that which she acquired from her husband was deemed to have transferred to her sister at the moment of her death. And the value of the property as of that moment is the one that is properly used to determine the amount subject to the inheritance tax.

The personal representative's argument that the value of the assets to be included in Sybil Wood Jacob's estate "should be valued as her entire interest in that [her husband's] estate, and not be a valuation based on the component parts of that estate as of the date of her death," is contrary to the language of the statute. The value of

the assets to be included in her estate acquired from her husband is the value of the individual assets at the date of her death.

*By the Court.*—Order affirmed.