LENA BROOKS *et al.* Appellants, *vs.* LENA McCALL GRETZ, Appellee.

*Opinion filed October 28, 1926.*

1. TRUSTS—*resulting trust arises from circumstances and not from agreement.* A resulting trust does not arise from or depend upon any agreement between the parties but is raised by law, and, as its name implies, it results from the fact that one man's money has been invested in land and the conveyance taken in the name of another.

2. SAME—*resulting trust must arise at instant title is taken.* A resulting trust is created, if at all, at the instant of the taking of the title, as it arises from the circumstances and status of the parties at the time the title is acquired and the money appropriated for the purchase, and it does not arise by reason of payments made which are not coincident with the purchase and the deed.

3. SAME—*proof must be clear and convincing to support resulting trust.* While a resulting trust may be established by parol testimony, the proof must be clear and convincing and so strong and unequivocal as to lead to but one conclusion, and if the evidence may be explained upon theories other than the existence of the trust it is not sufficient to support a decree declaring the trust.

4. SAME—*money loaned or used to make payments on property already purchased does not give rise to a resulting trust.* Money furnished for the purpose of making payments on land theretofore acquired under a contract cannot create a resulting trust in favor of the person so loaning the money, nor can a resulting trust in real estate arise by reason of the fact that money is loaned or used for the erection of buildings on the property.

5. SAME—*contribution to purchase of real estate must be for definite part to give rise to resulting trust.* Where several persons contribute to the purchase of real estate, it is essential, in order to create a resulting trust, that it shall appear that the sums severally contributed were for some distinct interest or definite part of the estate.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

FRANK H. LENNARDS, for appellants.

HARRY C. MORAN, and JOHN S. HUMMER, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

January 17, 1919, Ignatz Gretz departed this life, intestate, in Cook county, leaving him surviving appellee, Lena McCall Gretz, his widow, and Lena Brooks, Florian Gretz, Frank J. Gretz and Eleanor Coleman, appellants, his children. At the time of his decease Gretz and appellee held title in joint tenancy to the three parcels of land which are in controversy in this case. Immediately after his decease, and before his burial, appellants made a demand upon appellee for a share of his estate. They were told to wait until after the funeral, when their claims would be investigated. Some time thereafter they filed a bill in the circuit court of Cook county in chancery against appellee. When this bill was filed, its nature and what proceedings were had thereon is not disclosed by the record, but on July 17, 1922, an amended bill was filed. To this amended bill a general demurrer was sustained by the court and the amended bill dismissed for want of equity. An appeal was taken to this court, and in *Brooks* v. *Gretz,* 313 Ill. 290, the decree of the circuit court dismissing the bill for want of equity was reversed and the cause remanded, with directions to overrule the demurrer to the bill. For a full statement of the contents of the amended bill reference is made to the *Brooks case.* After the mandate of this court was filed in the circuit court appellee filed her answer, in which she denied that appellants were entitled to any of the relief prayed for in the bill. The cause was referred to a master in chancery, who heard the evidence and reported it to the court with his findings and a recommendation that the bill be dismissed for want of equity. The cause was heard by the court upon exceptions to the master's report and a decree entered sustaining the findings and recommendation of the master, from which decree an appeal has been perfected to this court.

With reference to the tract designated by the master as parcel 1, the evidence shows that on May 21, 1906, it was purchased by Ignatz Gretz and at his direction the title was taken in the name of appellant Frank J. Gretz, who executed a trust deed thereon to secure the balance of the purchase price, which was thereafter paid by Ignatz and the trust deed released of record; that on July 27, 1908, there was recorded in the recorder's office of Cook county a warranty deed dated July 24, 1908, purporting to be executed by Frank J. Gretz and wife and purporting to convey to Catherine L. Ernst the title to parcel 1; that on July 31, 1908, Mrs. Ernst and her husband by their warranty deed conveyed the title of parcel 1 to appellee, Lena Gretz, then Lena McCall.

It is contended by appellants that at the time of the execution of the deed of Frank J. Gretz and wife of parcel 1, on July 24, 1908, it did not contain the name of a grantee, and that the name of Catherine L. Ernst was inserted after the delivery of the deed to Ignatz Gretz without the knowledge or consent of the grantors. Frank J. Gretz, his wife and his wife's father testified that at the time of the delivery of the deed it did not contain the name of a grantee. Andrew J. Ernst, the real estate man who had the deed drawn, and Joseph Sebastian, the scrivener who wrote the deed and who took the acknowledgment of the Gretzs as notary public, both testified that before the deed was signed they compared the deed and that the name of Mrs. Ernst was therein as grantee, it having been inserted at the request of Ignatz Gretz. Sebastian testified that after comparing the deed of Ernst he took it to the residence of the grantors, where they both signed it in his presence, and that the name of the grantee was in the deed at the time it was signed. Neither of these witnesses had any interest in the present litigation. The master in chancery saw and heard the witnesses and in addition thereto had the benefit of a personal inspection of the deed, the ink with which it was

written and the character of the handwriting, from which he might be able to judge whether or not the writing in the instrument was all done at one time, with the same pen and ink, or whether it was done at different times. Upon this record we would not be justified in disapproving the finding of the master upon this question of fact.

It is next contended by appellants that this deed was given without any consideration. Frank J. Gretz, his wife and his wife's father testified that at the time of the execution of the deed no money was paid to Frank except $400, which was paid him in settlement of a partnership existing between him and Ignatz. Prior to the making of this deed Ignatz and Frank had been in partnership in the box-making business, and there is evidence tending to show that they disagreed and Ignatz was desirous of dissolving the partnership, settling in full with Frank and getting the title to parcel 1 out of Frank's name, and that Frank demanded $1000 to release his father, dissolve the partnership and transfer the title; that Ignatz did not have this amount of money, and, as his other properties were mortgaged, could only raise this amount by disposing of this parcel; that he offered to sell it to others and finally offered it to appellee for $1000, he to retain the use of the shop, and that after some persuasion she agreed to purchase it on those terms. Appellee testifies that she purchased the premises at the request of Ignatz; that she gave him the sum of $1000 as the purchase price of the premises. In this statement she is corroborated by her daughter, who testifies to being present at the time of the payment of the $1000. Ernst testifies that Ignatz instructed him to prepare the deed from Frank to Mrs. Ernst and gave him the $1000 to give to Frank, and that the deed was taken in the name of Mrs. Ernst at his suggestion, and that he gave the money to Sebastian to give to Frank. Sebastian testified that he took the $1000 with him to the Gretz home; that Ignatz told him that he got the money from appellee;

that upon the signing of the deed he counted the $1000 to Frank in the presence of Frank's wife, his wife's father and Ignatz, and that Frank counted the money again at the request of Ignatz. The master found that appellee paid a valuable consideration for parcel 1, and his finding is sustained by the evidence.

As to parcel 2, the evidence shows that appellee on September 27, 1890, prior to her marriage to Ignatz, obtained title to it by warranty deed from S. Rogers Touhy, the consideration in the deed being stated at $2500. Touhy testified that he sold the parcel to appellee and that he never had any dealings with Ignatz, and this evidence is uncontradicted.

On October 20, 1885, Ignatz Gretz purchased parcel 3 for $850, which was paid partly in cash and the balance secured by a mortgage, which balance was thereafter paid by Ignatz and the mortgage released. At the direction of Ignatz the title to this parcel was taken in the name of Anna Gretz, his then wife, and Lena Brooks. During the same year Ignatz erected a cottage on the premises, in which he, his wife and appellants lived. This cottage was thereafter moved to the rear of the lot and in 1901 Ignatz erected on this lot a three-story building. On July 2, 1890, Anna Gretz and Lena Brooks conveyed the title of this parcel to August Schaeffers, who on the same day conveyed it to Ignatz. In January, 1896, Anna Gretz was adjudged an insane person by the county court of Cook county and confined in a State asylum for the insane until her death, which occurred in March, 1911. Some time after the death of his first wife Ignatz married appellee. Thereafter, on January 10, 1912, Ignatz and appellee conveyed the title to parcel 3 to Mrs. Ernst, who on January 11, 1912, conveyed the title thereto to Ignatz and appellee in joint tenancy. On June 22, 1916, Ignatz and appellee sold parcel 3 to Guiseppi Turetta for $5500, subject to an encumbrance. On January 10, 1912, Ignatz and appellee conveyed parcels 1 and 2

to Mrs. Ernst, who on January 11, 1912, conveyed these parcels to Ignatz and appellee in joint tenancy, and they continued to so hold the title until the death of Ignatz.

It is the contention of appellants that when they, respectively, became of working age their father ordered them to become self-sustaining, and requested them to find employment and pay him board at the rate of three dollars per week, respectively; that they thereby became emancipated from the control and parental authority of their father; that their father promised to keep all of their salaries above the amount agreed upon for board and clothing for them and invest such moneys in interest-bearing investments; that they invested with their father large amounts of money, believing and relying upon the representations made to them by him that moneys turned over to him would be saved and invested for them in interest-bearing investments.

Lena Brooks testified that she was born in 1871 and started to work for money in the spring of 1885, at which time she had a talk with her father, who told her to go to work and get some money and that he was going to work, and that he would invest the money and save it for the children; that they should all help and that he would invest in property, and that after his death the children would get it all back and more than they would earn; that up to the time she got married she earned $1600, which she gave to her father; that he charged her three dollars a week for board; that she added up what she had earned, and that it made $1600 after deducting the board and $25 a year for clothes.

Eleanor Coleman testified that she lived at home with her father until she was twenty-one; that she started to work when she was fourteen years of age, at which time she had a talk with her father about the money that she was going to earn, in which he told her that he was going to keep the money for the children and take out their board;

that she paid to her father in all $1850 which she had earned; that after that time she had talks with her father about the money; that he said he was going to invest it for the benefit of all of the children.

Florian Gretz testified that he went to work when he arrived at the age of twelve years and that he gave his money to his father until he was twenty-one years of age, after which time he gave him $20 a week for five years; that he figured that he had given him $4400 until he was twenty-one years old and $4400 after he was twenty-one; that after he became twenty-one he had a talk with his father in which he told his father that he would give him $20 a week for five years; that his father said he would keep it and save the money; that he was going to put up the building which he always said was for the children; that he said, "When I pass away it will be yours;" that he said the money was to be invested for the children; that in 1907 his father told him that he had the property in Frank's name and that if anything happened to him witness would know where to get his share.

Frank Gretz testified that when he was fourteen years old he started to work to earn money, at which time he had a talk with his father, who told him to go to work and help him and he would be rewarded for it later on, because all the money he earned he would save for his children; that he went to work and continued giving all his money to his father until he was twenty-four, at which time he got married; that he computed the amount over and above what was to be deducted for board and clothes at $3250; that he was in the box business with his father in 1907, during which time he had a piece of property in his name (parcel 1); that at the time he made the deed dated July 24, 1908, his father said with reference to the deed: "I want to keep that lot now; you turn this over to me; I want to hold it in trust for the children so in case anything should happen to you that your wife would not get it, and so I

will hold it in trust for the rest of the family;" that on March 24, 1906, when his father bought the lot, he said: "Frank, I am going to put this lot on the corner for the benefit of you children, and I am going to put this in your name to hold in trust for the children."

None of the appellants are corroborated by any other witness, and the testimony of Frank is much weakened by the introduction of a receipt signed by him acknowledging the receipt on July 25, 1908, of $300 in full payment of a note dated about July 10, 1901, and due three years after date, payable to Ignatz Gretz, which had been lost or destroyed. When this receipt was first produced Frank denied his signature thereto but finally acknowledged it.

It is contended by appellants that by reason of the contribution of their earnings to their father a resulting trust in the properties in question was created in their favor. A resulting trust does not arise from or depend upon any agreement between the parties. As its name implies, it is independent of any contract and is raised by the law upon a particular state of facts. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another. It is immaterial whether the purchase was made and the money of the *cestui que trust* paid by the trustee or the *cestui que trust.* If the fact exists, by mere operation of law a trust is raised in favor of the party whose money was used to purchase the land, either to the whole or to his equivalent portion thereof. (*Bruce* v. *Roney,* 18 Ill. 67; *Baughman* v. *Baughman,* 283 id. 55; *Frewin* v. *Stark,* 319 id. 35.) A resulting trust is created, if at all, at the instant of the taking of the title. (*Lord* v. *Reed,* 254 Ill. 350.) While a resulting trust may be established by parol testimony, the proof must be clear and convincing, and so strong, unequivocal and convincing as to lead but to one conclusion. (*Winkelman* v. *Winkelman,* 307 Ill. 249.) If the explanation of the evidence may be made upon theories other than the existence

of the trust such evidence is not sufficient to support a decree declaring and enforcing such trust. (*Rubin* v. *Midlinsky,* 321 Ill. 436; *Reeve* v. *Strawn,* 14 id. 94.) A resulting trust does not arise by reason of payments made which are not coincident with the purchase and the deed. It must arise, if at all, from the circumstances and status of the parties as they existed at the time the title was acquired and the money was appropriated and used in the purchase thereof. Money furnished for the purpose of making payments on lands theretofore acquired under a contract can not create a resulting trust in favor of the person so loaning the money; neither can a resulting trust arise in real estate by reason of the fact that money is loaned or used for the erection of buildings on the property. (*Furber* v. *Page,* 143 Ill. 622; *Lear* v. *Chouteau,* 23 id. 37; *Pain* v. *Farson,* 179 id. 185.) Where several persons contribute to the purchase of real estate, it is essential, in order to create a resulting trust, that it shall appear that the sums severally contributed were for some distinct interest or definite part of the estate. (*Reed* v. *Reed,* 135 Ill. 482; *Strong* v. *Messinger,* 148 id. 431; *Katzing* v. *Wiegand,* 286 id. 646.) There is no evidence in this record showing or tending to show that any definite part of the purchase money of any one of these three parcels of land was furnished by appellants or by any one or more of them. When the evidence in the case is tested by the rules herein laid down, it is evident that appellants have failed to make the proof required by law to entitle them to a decree declaring that appellee held the title to any one of these three parcels of land in trust for appellants or any of them, and the court therefore properly held that such trust did not exist.

Appellants having failed to prove that the deed from Frank Gretz to Catherine L. Ernst did not contain the name of a grantee when delivered, that said deed was made without any consideration, and also having failed to prove that

the title to the property in controversy was held in trust for their benefit, the court properly dismissed the bill for want of equity.

The decree of the circuit court must therefore be affirmed.

*Decree affirmed.*