(No. 33481.—

LORETTA P. WEST, Appellee, *vs.* EMMA P. SCOTT, Appellant.

*Opinion filed May 20, 1955.*

168

C. FRANCIS STRADFORD, of Chicago, for appellant.

BRADEN, HALL, BARNES & Moss, of Chicago, (GEORGE S. BARNES, of counsel,) for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is an equity action commenced in the circuit court of Cook County by the plaintiff, Loretta P. West, seeking to quiet title to real estate and to compel the defendant, Emma Scott, later known as Emma Bazel, herein referred to as defendant, to convey to the plaintiff her undivided half interest in the premises standing in the name of the plaintiff and the defendant as joint tenants. Upon a hearing on complaint and answer, the trial court decreed a conveyance of the defendant's interest in the property to plaintiff, reserving jurisdiction to protect the interests of the parties. A freehold being involved, defendant brings a direct appeal to this court.

Plaintiff West contends that the payment of the purchase price by her under the circumstances of the case vests in her an undivided one-half interest in fee simple in the

premises and vests an undivided one-half interest therein in defendant, in trust for the use and benefit of the plaintiff, and creates a duty to convey upon the defendant. Defendant maintains that the evidence does not support the imposition of a trust, but on the contrary indicates an intention to create a beneficial interest in the defendant.

Insofar as the evidence is undisputed, the facts are that the plaintiff, Mrs. West, was about 70 years old at the time of the transaction and was not working. She had two nieces, the defendant, who was unmarried, and Agnes Weaver, who was married. The plaintiff was very close to both of her nieces and had great trust and confidence in them. Prior to the purchase of the building in question, she owned another property which she sold for about $12,000 in April, 1947. She later purchased the premises in dispute, referred to as the Vernon Avenue property, for $15,500. She received only about $10,0co in cash from the first sale and it was necessary to raise about $6000 of the purchase price by mortgage. Because of her advanced age and small income the mortgagee bank required a cosigner on the mortgage and cosigners on the mortgage note. The original offer to purchase the premises was signed by plaintiff and her two nieces. The real estate contract subsequently executed was signed only by plaintiff and her niece, the defendant. Title passed by joint tenancy deed to plaintiff and defendant, and they executed a mortgage to the bank. The notes secured by the mortgage were signed by plaintiff and her two nieces. Mrs. Weaver's name was omitted from the deed and mortgage to avoid any possible interest in her husband. Plaintiff paid the original purchase price on the premises and has made all the payments on the mortgage which now has a balance of less than $2000. She has also paid the taxes and all expenses of the building.

Apart from these uncontroverted facts the evidence is conflicting. Plaintiff testified that her broker, Wilbur M.

Slaughter, and her attorney, George W. Lawrence, said they had someone else on the deed because of the need of getting a mortgage; that Lawrence and defendant suggested defendant's name and dissuaded her from putting the names of both nieces on the deed. She testified that her broker said they would take defendant's name off the deed as soon as the mortgage was settled; that she use Lawrence for her attorney at the suggestion of defendant and that he was going to take care of it. She testified that Lawrence told her that defendant's name was put on the deed only because she was young and assured her that the property was hers; that after the purchase of the property, he told her that she would have to get her own lawyer as he was defendant's lawyer. She further testified that she allowed defendant's name to be on the deed because she felt it was being put there for her benefit and she had faith in defendant.

The defendant, Emma P. Scott, testified that plaintiff asked her to go out and find a place for plaintiff, defendant, and Agnes Weaver. She said, "When I purchase this building I am going to have it recorded for you and Agnes because I feel that you are the only two girls I have left and whatever I have, I want you and Agnes to have." The defendant further testified that plaintiff objected to Agnes's name being on the contract or deed because she did not want Agnes's husband to have any benefit from it; that Lawrence was plaintiff's attorney and Mrs. Scott-Bazel did not know him until she met him with Mrs. West.

Anthony T. Quarles was the broker who sold the original property for plaintiff and negotiated the purchase of the property in question here. He testified that he sold her first property about April, 1947; that she engaged him to purchase the Vernon Avenue property; and that defendant's name appeared on the contract to purchase the Vernon Avenue property. He further testified that he understood at the time that her name was to be on the

deed for the purpose of enabling plaintiff to get a mortgage; that he told her that she would need a cosigner in order to get a loan; and that defendant's name was on the deed so that Mrs. West could get a mortgage loan.

Slaughter, another broker in the transaction, denied telling plaintiff that he would get defendant's name off the deed. He did arrange for the two nieces to be cosigners on the mortgage note. He was sent to plaintiff by the defendant. Mrs. West told him, "I want to purchase a piece of property for myself and it will be my two nieces with me."

Attorney Lawrence, who appeared in the trial court as one of the attorneys for defendant, testified on her behalf. He testified that he had known plaintiff since 1932 and had seen her often since the death of her husband in 1946; and that in March, 1947, plaintiff arranged for an appointment with her two nieces and himself. They brought in the original offer to purchase with the three signatures. She later called and asked if having Agnes's name on the contract would make it possible for Agnes's husband to get in that property. When he said "yes," she brought in the contract to purchase which bore only the names of plaintiff and defendant. Lawrence testified that the deed to the property was prepared by the attorney for the seller at the direction of Mrs. West, Emma Scott, and Mrs. Weaver; that the bank wanted all the collateral they could get, so plaintiff said that they would put the three names on the note and only two on the mortgage.

The testimony of the other witnesses, including that of Agnes Weaver, the other niece, adds little of value on the controverted issues.

At the outset we are faced with the legal effect of an absolute deed in joint tenancy where one of the joint tenants furnishes the entire consideration. As we said in *Bowman* v. *Pettersen*, 410 Ill. 519, at 524: "Where a deed, absolute in terms and without condition or reservation, con-

veys real estate to two persons as joint tenants, the language of the deed is sufficient to show an express intent to convey both the legal title and the beneficial interest to the two grantees, but if the purchase price was paid by only one of such grantees, this indicates an intention that this grantee is the only one beneficially interested in the property, and, under such facts, the expressed intent as shown by the deed must give way to the rule of equity which protects the party paying the purchase price by raising a resulting trust in his favor. (*Kane* v. *Johnson,* 397 Ill. 112.)" The payment of the consideration raises a *prima facie* presumption in favor of a resulting trust, which presumption, however, may be rebutted by parol proof of an intention on the part of the payor that the grantee shall take the beneficial interest and not merely the legal title. The intention of the payor is to be gathered from facts and circumstances shown in evidence. *Rolofson* v. *Malone,* 315 Ill. 275.

A resulting trust has been called an "intent enforcing" trust, created by operation of law and having its roots in the presumed intention of the parties. (*Wright* v. *Wright,* 2 Ill. 2d 246; *Craven* v. *Craven,* 407 Ill. 252.) A court of equity raises the trust when land is bought with the money of one person and title is taken in the name of another. (*Kane* v. *Johnson,* 397 Ill. 112.) It may be paid directly or indirectly to the grantor, and by or for the resulting trust claimant. (*Wright* v. *Wright,* 2 Ill. 2d 246.) The burden of proof rests upon the party seeking to establish a resulting trust, and the evidence to be effective for this purpose must be clear, convincing, unequivocal and unmistakable, and must establish beyond a doubt the payment by the claimed beneficiary at the time the title was taken in the alleged trustee. *Kohlhaas* v. *Smith,* 408 Ill. 535; *Hille v. Barnes,* 399 Ill. 252.

The evidence is uncontroverted that the plaintiff paid the original payment on the property, has paid for all

improvement thereon, as well as the taxes, and has made all the mortgage payments entirely with her own funds. All parties agree that title to the property in question was conveyed to plaintiff and defendant, as joint tenants. These undisputed facts bring this case within the announced doctrine of resulting trusts.

It is argued here that the necessity of a cosigner on the mortgage note takes this case out of the ordinary rule of resulting trusts because the signing of the note was consideration for the conveyance to defendant. It is conceded in the testimony that plaintiff furnished the entire consideration for the purchase of the property and that defendant has made no payments on the mortgage note and does not anticipate doing so. Thus, the cosigning did not constitute a *quid pro quo* for the conveyance. Actually the defendant did nothing more to her detriment than her sister Agnes Weaver, who likewise cosigned the note. However, the name of Agnes Weaver did not appear on the deed. The argument that the signing of the note was consideration for the transfer is not sustained by the evidence. In this respect the case is similar to *Wright* v. *Wright,* 2 Ill. 2d 246. There a mother desired to purchase a building but was unable to obtain a mortgage loan. Her son, a veteran, agreed to obtain a G.I. loan and take title to the premises. This he did and the mother proceeded to pay off the mortgage. It was held that a resulting trust arose from these facts. As we said there, "In form, the son was the purchaser and the mortgagor; in substance the mother was the purchaser and the mortgagor. The transaction in reality was in the nature of a loan from the defendant to plaintiff of funds borrowed by defendant. The transaction fairly admits of the construction that defendant's title was necessary to accomplish his borrowing and was operative to secure him as to his loan to plaintiff." *Scott* v. *Beach,* 172 Ill. 273; *Fleming* v. *McHale,* 47 Ill. 282.

In the case at bar the transaction fairly admits of the construction that defendant's title was necessary to enable her to execute the mortgage as an accommodation to her aunt, the plaintiff.

Upon the foregoing facts and considerations, the law raises a *prima facie* presumption in favor of a resulting trust, and imposes the burden upon the defendant of showing an intention that she was to have some beneficial interest in the property. (*Bowman* v. *Pettersen,* 410 Ill. 519.) Evidence of intention of the party to create a resulting trust is not necessary to its existence, and if one party pays the purchase money for the land and deed is made to another, in the absence of all evidence of intention, the law presumes a trust. (*Belleson* v. *Ganas,* 394 Ill. 557.) This intention or presumption must be present at the time of the conveyance, as a resulting trust arises, if at all, at the instant legal title vests. *Craven* v. *Craven,* 407 Ill. 252; *Hille* v. *Barnes,* 399 Ill. 252; *Murray* v. *Behrendt,* 399 Ill. 22.

In the light of these principles we have reviewed the evidence. Unfortunately the only clear testimony of intention comes from the two litigants. The plaintiff categorically denies any intention to make a gift of a beneficial interest to defendant. Defendant claimed an express intention to give her an interest in the property and testified that in March of 1947 plaintiff said, "When I purchase this building, I am going to have it recorded for you and Agnes because I feel that you are the only two girls that I have left and whatever I have left and whatever I have I want you and Agnes to have and I will have it fixed so that you won't have any trouble if it ever comes to the time that . . ." This testimony discloses a general desire by plaintiff to take care of her two nieces equally. Other evidence in the case shows the necessity of a cosigner on the mortgage and of cosigners on the mortgage note, in order for plaintiff to purchase the property. If defendant's

contention is upheld, the alleged intent of plaintiff to make equal distribution of the property to her nieces is frustrated. If plaintiff's contention is believed, the reason for the joint deed is established. We have carefully examined the evidence of all the witnesses in the hope that it would shed some further light upon the intention of plaintiff. As to the testimony of attorney Lawrence, it is undeterminative of the question of intention. We cannot, however, look with favor upon the testimony of an attorney who represents one party in the purchase of real estate, then appears as counsel of record in the trial court for an adverse party in a suit arising out of such purchase, and in addition takes the stand on behalf of his latter client to testify as to that transaction between the parties. While we do not suggest any wrongdoing on the part of counsel, such conduct cannot raise the esteem of the bar in the eyes of the public. We have repeatedly criticized such conduct. *Jones* v. *Meyers,* 410 Ill. 213; *Crescio* v. *Crescio,* 365 Ill. 393; *Beninca* v. *Nardiello,* 320 Ill. 181.

Taking the evidence as a whole, we feel that plaintiff has clearly and convincingly proved that she paid the entire price for the property placed in the joint names of the plaintiff and the defendant and has paid for all improvements thereon, the taxes and all mortgage note payments. Such facts raised a *prima facie* presumption in favor of a resulting trust and imposed the burden upon the defendant to show that she was to have some beneficial interest in the property. We do not feel that the defendant has met the burden of rebutting the presumption of a resulting trust. The chancellor heard the evidence and found that the equities were with the plaintiff, and we are of the opinion that such finding is sustained by the evidence.

The decree of the circuit court of Cook County is therefore affirmed.

*Decree affirmed.*