FRANK C. KEY, Plaintiff and Counterdefendant-Appellant, *v.* MINNIE MARIE KEY, Defendant and Counterclaimant-Appellee.—(Max Carpenter *et al.*, Defendants.)

Fourth District   No. 4—82—0178

Opinion filed December 29, 1982.

WEBBER, P.J., dissenting.

John J. Yelvington, of Mattoon, for appellant.

Ralph D. Glenn, of Glenn and Logue, of Mattoon, and Harrison J. Mc-Cown, of Nichols, Jones, McCown & Lincoln, of Tuscola, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

Plaintiff filed a complaint for partition of certain land located in Coles County. Defendant, Minnie Key, plaintiff's mother, counterclaimed, seeking to impose a trust on the entire acreage. The trial court found that plaintiff held the land in trust for Minnie, dismissed the complaint for partition, and ordered plaintiff to convey to Minnie any interest he might have in the premises. We affirm the trial court.

The derivation of the parties' title may be briefly stated. In 1947, plaintiff's father and Minnie's husband, Charles Key, was desirous of purchasing the land, but was unable to secure a sufficient loan. Plaintiff and his brother, Eugene, had recently been discharged from military service and had available to them certain provisions of the Soldiers' and Sailors' Civil Relief Act, commonly called the "G.I. Bill," by which they could obtain government-guaranteed mortgages. The purchase price of the land was $15,250; Charles, the father, provided a down payment of $2,250; plaintiff obtained a G.I. loan of $6,500 from the Veterans' Administration; Eugene, the brother, was only 19 years of age at the time and hence it was necessary under Federal regulations that a guardian be appointed for him in order to obtain his loan.

Charles filed a petition for guardianship in the circuit court of Douglas County, seeking to have himself appointed as guardian for Eugene. The court allowed the petition and Charles then signed the mortgage as guardian for Eugene. The conveyance was then made to plaintiff and Eugene as cotenants; the mortgage to Prudential Insurance Company in the amount of $13,000 was signed by plaintiff and Charles in his capacity as guardian.

In the verified petition filed by Charles for appointment as guardian of Eugene, it is said:

"[T]hat upon the consummation of the purchase of said real estate, the title and ownership thereto will be in the said Charles Eugene Key and Frank Clarence Key, in fee simple, as tenants in common, each owning an undivided one-half interest thereof, and the farming equipment and farming enterprise and the profits therefrom will be shared equally between them."

Charles did not sign the mortgage in his individual capacity. The signatures appearing on that document in the record are: "Charles

Eugene Key, a minor, by Charles H. Key His Guardian Frank A. Key" (handwritten portions underscored, the rest typewritten).

■■ Upon consideration of the opinions in *Bowman v. Pettersen* (1951), 410 Ill. 519, 102 N.E.2d 787, *Wright v. Wright* (1954), 2 Ill. 2d 246, 118 N.E.2d 280, *West v. Scott* (1955), 6 Ill. 2d 167, 128 N.E.2d 734, and *Suwalski v. Suwalski* (1968), 40 Ill. 2d 492, 240 N.E.2d 677, we affirm the determination of the trial court that the transaction created a resulting trust in favor of the father, and his devisee.

In each opinion the essential characteristic is that a resulting trust was employed by the court to protect and preserve the interest of the party who paid the consideration and the expenses incident to the acquisition of the property.

In *Bowman v. Pettersen*, heirs sued to establish a resulting trust as to a dwelling in joint tenancy by the ancestor. When the ancestor was of advanced years he purchased the property directing that the deed be placed in joint tenancy with a young woman associate. Distinguishing the presumption which exists when a husband purchases real estate and places it in joint tenancy with his spouse, the supreme court noted that the chief factual issue was which joint tenant had paid the consideration for the real estate.

It appears that in *Pettersen* the conveyance was substantially a cash transaction. The opinion states:

> "A resulting trust arises by operation of law where one person pays or furnishes the consideration for a deed conveying real estate to another. Whether or not such a trust arises depends in every instance on the intention, at the time of the conveyance, of the person who furnishes the purchase price. [Citations.] Such a trust arises, if at all, the instant the legal title is taken, and is founded upon the natural equity that he who pays for the property should enjoy it, unless he intended by the vesting of title to confer a beneficial interest upon the grantee. [Citations.] The payment of consideration raises a *prima facie presumption in favor of a resulting trust*. This presumption may be rebutted by parol proof of an intention on the part of the payor that the grantee shall take the beneficial interest and not merely the legal title." (Emphasis added.) 410 Ill. 519, 524, 102 N.E.2d 787, 790.

With the citation of *Kane v. Johnson* (1947), 397 Ill. 112, 73 N.E.2d 321, the court stated:

> "[T]he expressed intent as shown by the direction and the deed, standing alone, must give way to the rule of equity which protects the party paying the purchase price by raising a re-

sulting trust in his favor." 410 Ill. 519, 531-32, 102 N.E.2d 787, 794.

In *West v. Scott*, the application of a *prima facie* presumption of a resulting trust was reiterated. By reason of the age of the plaintiff, the lender required a cosignor of a note and mortgage. Hence, title was placed in joint tenancy with a niece who so cosigned. Upon plaintiff's action to quiet title, the court directed the niece to convey her claimed interest to plaintiff. The court stated:

> "It is argued here that the necessity of a cosigner on the mortgage note takes this case out of the ordinary rule of resulting trusts because the signing of the note was consideration for the conveyance to defendant. It is conceded in the testimony that plaintiff furnished the entire consideration for the purchase of the property and that defendant has made no payments on the mortgage note and does not anticipate doing so. Thus, the cosigning did not constitute a *quid pro quo* for the conveyance" (6 Ill. 2d 167, 173, 128 N.E.2d 734, 737)

and continued:

> "Taking the evidence as a whole, we feel that plaintiff has clearly and convincingly proved that she paid the entire price for the property placed in the joint names of the plaintiff and the defendant and has paid for all improvements thereon, the taxes and all mortgage note payments. Such facts raised a *prima facie* presumption in favor of a resulting trust and imposed the burden upon the defendant to show that she was to have some beneficial interest in the property." 6 Ill. 2d 167, 175, 128 N.E.2d 734, 738.

In *Suwalski v. Suwalski* (1967), 88 Ill. App. 2d 419, the trial court imposed a resulting trust upon the real estate held in joint tenancy. Plaintiff's father sought to purchase a home by a substantial down payment and a mortgage. By reason of his then age, he was unable to procure the full amount of the loan required. The defendant, a son, cosigned the contract note and mortgage and at the closing of the sale paid $1,500 to the lending institution. Title was taken in joint tenancy. Later, the father tendered $1,500 to the son and demanded conveyance. The latter then contended that he was a purchaser for value and an owner in joint tenancy.

The record showed that apart from the $1,500 initially paid, the son had not paid any of the mortgage payments, taxes, repairs, or improvements. The appellate court (*Suwalski v. Suwalski* (1967), 88 Ill. App. 2d 419, 424, 232 N.E.2d 64) reversed the judgment of the trial court, noting the principle that "a resulting trust arises, if at all, at

the time of purchase and is based upon the intention of the parties at that time" and commented, that plaintiff's evidence of payment "relates to the actions of the parties after the transactions in dispute."

The supreme court reversed the appellate court and affirmed the trial court with a finding of a resulting trust for the reason that the record disclosed that the payment of $1,500 by the son to the grantor and the fact that he was named as grantee in the deed did not make the son a joint tenant, because the intention of the parties was that the $1,500 was considered a loan. The opinion quoted from 3 Scott on Trusts sec. 448, in part:

> "Suppose that B lends money to A in order that A may purchase land from X, but B pays the purchase money directly to X and takes title in his own name. It is true that in that case the money which was advanced by B never actually belonged either legally or equitably to A. Just before B paid it over to X, the money belonged to B; just after B paid it over to X, the money belonged to X. There were not two separate transactions in which B first lent the money to A, and A subsequently paid it over to X, in which case it would have been clearly A's money which was paid to X. The courts have rightly held, however, that it is immaterial that the loan to A and payment to X constitute a single transaction. A loan may be made in other ways than by handing the money over to the borrower. It may be made by paying it to another at the borrower's request. Hence although B pays the purchase money directly to X, yet in substance it is A's money, being lent to A by B. There is therefore a resulting trust for A." (40 Ill. 2d 492, 498, 240 N.E.2d 677, 680.)

As to the relevant facts supporting the conclusion, the court stated:

> "There was a question about appellant's credit for the full loan. The appellee made no contribution to the mortgage payment (though without corroboration he claimed a payment of $10 per week) and did not contribute to insurance premiums, real-estate taxes or water-bill payments. He did not claim or exercise any ownership rights, ***." 40 Ill. 2d 492, 499, 240 N.E.2d 677, 681.

The opinion in *Wright* contains many factual matters similar to those found on this appeal. Plaintiffs wished to purchase the house, which she then leased and rented as student housing. She was unable to procure conventional financing but her son was eligible for a "G.I. loan." It was arranged that he procure the loan for such amount as he was eligible, and a supplemental loan secured by a second mort-

gage was obtained from a friend. The conveyance and mortgage were solely in the name of plaintiff's son, but following the conveyance plaintiff paid all mortgage payments, taxes, and expenses concerning the real estate. After five years, the son claimed to own the property. Plaintiff's action to establish a resulting trust was dismissed for want of equity in the trial court.

The supreme court reversed the trial court, saying:

> "Defendant maintains that he furnished the entire consideration for the purchase of the property. Literally, this is true; he alone signed the two notes and the mortgages securing them. An examination of the entire transaction shows, however, that the proceeds of the mortgage notes were paid to the seller for the direct benefit of plaintiff. The situation is essentially the same as if the payment to the seller was a payment by the plaintiff of the funds borrowed by the mother from the son. Under such circumstances, the prerequisites to the raising of a resulting trust have been met. The evidence is clear and convincing that at no time did either plaintiff or defendant intend that he should have any beneficial interest in the property. He alone took title; he alone signed the notes and mortgages. His every act was, nevertheless, for and on behalf of plaintiff. His function in the transaction was to extend to plaintiff his credit, which he enjoyed because of his status as a veteran." (2 Ill. 2d 246, 252-53, 118 N.E.2d 280, 284.)

The opinion continued to recite the Restatement of the Law of Trusts sec. 448 (1935), that the form of the transaction would produce a resulting trust with the named grantee holding the property as security for the loan as a transaction in the nature of a mortgage.

The court held that in the light of the circumstances that the plaintiff paid all of the mortgage payments and other expenses, the defendant son held title under a resulting trust subject to the security interest in the defendant for the mortgage loan.

Here, as in *Wright*, the conveyance was in the names of the plaintiff and his brother. However, the plaintiff's father, who was the predecessor in title of defendant mother, made a substantial cash payment at the time of the conveyance and thereafter effectively made all payments upon the mortgages, taxes, and repairs, and the record shows that certain sums advanced by plaintiff upon the mortgage were shortly reimbursed. The trial court found that the plaintiff made no claim to the ownership of the real estate from the date of the conveyance in 1947 until the death of the father in December 1973. Such conclusion is sustained by the record.

This case differs from *Wright* in that there the evidence was uncontradicted that neither during the negotiations for the sale nor at the time of conveyance was there any intent on the part of the mother or the son that the son would have any beneficial interest in the property. All of the evidence indicated that the son was to be the owner in name only. Here, the direct statement at the time of conveyance was that the sons, as named grantees, were to have the beneficial interest. However, a comparable direction was held not to control in *Petterson*. Under *Wright, Suwalski,* and *West*, the supreme court has examined the conduct of the parties subsequent to the questioned conveyance to determine the intent of the parties at the time of the conveyance. The subsequent payments by the father and then the mother of the principal and interest on the mortgage indebtedness and those for repairs, insurance, and taxes and their receipt of the crops was evidence of this intent. So was evidence that plaintiff made no claim to the ownership of the property from 1947 until the death of his father in December 1977.

■ The memorandum opinion of the trial court refers to plaintiff's claim that the "G.I. loan" was obtained through fraud, so that the defendant should not be permitted to recover. The trial court held that the defense was not applicable under the circumstances. The issue of "unclean hands" in obtaining a loan was not initially raised in plaintiff-appellant's brief, but was referred to in appellee's brief, and again, in the reply brief.

The trial court's determination is supported by the opinion in *Evangeloff v. Evangeloff* (1949), 403 Ill. 118, 85 N.E.2d 709. In an action to establish a resulting trust, it was contended that the transaction was in fraud of creditors and that relief should be barred by the doctrine of "unclean hands." The opinion quoted from *Mills v. Susanka* (1946), 394 Ill. 439, 445-46, 68 N.E.2d 904, 907, as follows:

> "What was said in the *Mills* case applies here, 'The dirt upon plaintiff's hands must be his bad conduct in the transaction complained of. If he is not guilty of inequitable conduct toward the defendant in that transaction his hands are as clean as the court can require. *** The wrong must have been done to the defendant himself, ***.' Had the alleged fraud been established as a fact, the maxim could not have been applied by the chancellor because no wrong would have been done to defendants by Naum." (403 Ill. 118, 126, 85 N.E.2d 709, 714.)

The rule was reiterated in *Mascenic v. Anderson* (1977), 53 Ill. App. 3d 971, 369 N.E.2d 172. There plaintiff brought an action to establish a resulting trust. The trial court denied relief upon a conclusion that

the plaintiff has established the trust to prevent his wife from obtaining any marital interest, and noted that the doctrine of "unclean hands" required such action. The reviewing court reversed and remanded upon the finding that there was no evidence that plaintiff's conduct with regard to his wife had affected the parties against whom relief was sought, and said:

> "We deem it well settled that misconduct on the part of a plaintiff which will defeat a recovery in a court of equity under the doctrine of 'unclean hands' must have been conduct in connection with the very transaction being considered or complained of, and must have been misconduct, fraud, or bad faith toward the defendant making the contention. (*Evangeloff v. Evangeloff* (1949), 403 Ill. 118, 126, 85 N.E.2d 709, 714.) The 'clean hands' doctrine is not a judicial straightjacket, is not favored by the courts, is not intended to prevent equity from doing complete justice, and its application is a matter for the sound discretion of the trial court." 53 Ill. App. 3d 971, 972, 369 N.E.2d 172, 173.

Upon such authority, we conclude that the trial court correctly refused to consider the argument of "unclean hands" and we affirm the trial court.

Affirmed.

GREEN, J., concurs.

PRESIDING JUSTICE WEBBER, dissenting:

I respectfully dissent. The majority rely upon a fact not sustained in the record and upon conduct of the parties subsequent to the conveyance to reconstruct by inference what the intent of the parties was.

I do not quarrel with the extensive authority cited in the principal opinion but suggest that it is inapplicable here. In all of those cases there was no evidence of intent at the time of the conveyance and hence the courts were compelled to examine subsequent conduct in order to divine that intent. In the instant case the sworn statement of the father to the circuit court of Douglas County in petitioning for leave to execute the mortgage cannot be gainsayed nor blinked upon. The same is true of the manner in which the mortgage deed was signed. The father never bound himself individually. Here is specific evidence of intent which was lacking in all of the cases cited in the majority opinion.

The majority state that the father was unable to secure a sufficient loan with which to purchase the property. This theory is not sustained by the record. There is one ambiguous statement only which looks in that direction. The claimant, Minnie, called as a witness her son, Eugene, who had theretofore quit-claimed his interest, and on direct examination the following question and answer were given:

"Q. [Mr. Glenn, claimant's counsel]: And do you recall the transaction that led to that deed being given? Do you remember the transaction that brought about the preparation and delivery of that deed?

A. [Charles Eugene Key]: Well, my brother and father was--already had seen about this farm before I even got home; and then had had--been this far and found out they had to have two G.I.'s to purchase it and naturally I used mine to purchase it too, so, had to take both of them to purchase it."

The fact that the parties elected to obtain G.I. loans is not *per se* proof that other means of financing were unavailable.

There was some conflict in the evidence as to what happened about payments on the mortgage, income from the farm, receipt and retention of gas storage payments, and other such matters following the delivery of the deed. However, it may be assumed that the father until his death, and the mother after that, made all of the mortgage payments, paid taxes and other expenses, and enjoyed all of the income. Subsequent events cannot give rise to a resulting trust. They are significant only in the context of attempting to reconstruct what the intent was at the time of the delivery of the deed when evidence of intent at that time is lacking. That, as I have already stated, is not the case here. There is the sworn statement in the guardianship proceeding and the signatures on the mortgage deed.

The general rule is stated by Professor Bogert:

"It is usually said by the courts that for a claimant to obtain a resulting trust, he must prove payment of the purchase price *at the time* of the delivery of the deed or other instrument of conveyance, or prior thereto, and that payments made by the claimant after such delivery do not give him the benefit of a resulting trust." Bogert, Trusts and Trustees sec. 456, at 665 (2d ed. 1977).

This rule has long been followed in Illinois. In *Briscoe v. Price* (1916), 275 Ill. 63, 67-68, 113 N.E. 881, 883, the supreme court said:

"A resulting trust must arise, if at all, at the time of the execution of the conveyance. A trust will not result to one who pays a part, only, of the purchase money of land conveyed to

another unless it be some definite part of the whole consideration, as one-half, one-third, or the like, and the trust can only arise from the original transaction at the time it takes place and at no other time. The funds must be advanced and invested at the time the purchase is made. A resulting trust cannot be created by funds subsequently furnished. It is not possible to raise such a trust by the subsequent application of the money of a third person in satisfaction of the unpaid purchase money."

In *Brooks v. Gretz* (1926), 323 Ill. 161, 169, 153 N.E. 643, 646, the supreme court again held:

"A resulting trust does not arise by reason of payments made which are not coincident with the purchase and the deed. It must arise, if at all, from the circumstances and status of the parties as they existed at the time the title was acquired and the money was appropriated and used in the purchase thereof. Money furnished for the purpose of making payments on lands theretofore acquired under a contract cannot create a resulting trust in favor of the person so loaning the money; neither can a resulting trust arise in real estate by reason of the fact that money is loaned or used for the erection of buildings on the property. [Citations.] Where several persons contribute to the purchase of real estate, it is essential, in order to create a resulting trust, that it shall appear that the sums severally contributed were for some distinct interest or definite part of the estate."

In the instant case there are other items of evidence apart from the payment of expenses and enjoyment of income which militate against the resulting trust theory. On February 23, 1973, the father asked for and obtained from Charles Eugene and his wife a quit-claim deed for their interest in the property. If we truly believed that they had no interest, what was the object of the conveyance? In August 1974 after the father's death a cousin inquired of the claimant about the purchase of the farm. The following appears in the record upon cross-examination of Minnie Key:

"Q. [Mr. Yelvington, plaintiff's counsel]: Now, I will ask you, Mrs. Key, if in August of 1974 you advised Frank that a cousin by the name of Madonna wanted to buy the farm. Did you advise him that Madonna Bunion wanted to buy the farm?

A. [Minnie Key]: I told him about her coming down there and wanted to know if we was going to sell it. I said well, I will have to ask Frank about it.

Q. And did you ask Frank at that time what he wanted for

his share of the farm?

A. I asked him what he wanted to sell it for cause she wanted to know."

This evidence was corroborated by the plaintiff and his wife.

In short, there was specific, concrete evidence of intent at the time of the conveyance, admitted by the claimant; there was evidence of subsequent events indicating a belief on the part of the claimant and her husband that they did not own the premises; and payment of obligations subsequent to the conveyance cannot raise a resulting trust.

If the claimant had any remedy here, it was by way of constructive trust. Her counterclaim was in two counts: resulting trust and constructive trust, the latter being predicated upon fraud and breach of fiduciary relationship. However, it appears that the constructive trust theory was abandoned, since only the resulting trust theory was briefed and argued in this court. Points not argued are waived under Supreme Court Rule 341(e)(7). 87 Ill. 2d R. 341(e)(7).

While both resulting trusts and constructive trusts are remedial devices, the distinction between the two should not be blurred as has happened in the majority opinion. Professer Bogert states the difference:

> "There now remains to be considered the origin of the two groups of trusts which are usually called implied trusts, namely, resulting and constructive trusts. No effort will be made to revise the terminology or classification of resulting and constructive trusts. The prevailing usage of the courts will be adopted. Resulting trusts will be treated as including purchase-money trusts, instances where an express trust does not exhaust the res given to the trustee, and cases of express trusts which fail in whole or in part. Constructive trusts include those cases where a court of equity finds that the defendant holds a property interest unfairly as against the complainant, but not under an express or resulting trust. They exist where the trust formula is applied as a remedial device, without regard to the intent of the parties." Bogert, Trusts and Trustees sec. 451, at 610 (2d ed. 1977).

I surmise that the claimant abandoned a constructive trust theory since no evidence could be produced of fraud or breach of fiduciary relation, these being the traditional bases in Illinois. (*Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678.) However, recent case law appears to extend the remedy beyond these and to reject such a rigid formula. Compare *County of Lake v. X-Po Security Police Service,*

*Inc.* (1975), 27 Ill. App. 3d 750, 327 N.E.2d 96; *County of Cook v. Barrett* (1975), 36 Ill. App. 3d 623, 344 N.E.2d 540; *Chicago Park District v. Kenroy* (1982), 107 Ill. App. 3d 222, 437 N.E.2d 783.

These cases appear to bring the constructive trust remedy within the ambit of Professor Bogert's doctrine:

"Wherever equity finds such wrongful holding it will give relief, whether the type of injustice is new or old. The court does not restrict itself by describing all the specific forms of inequitable holding which will move it to grant relief, but rather reserves freedom to apply this remedy to whatever knavery human ingenuity can invent." Bogert, Trusts and Trustees sec. 471, at 29 (2d rev. ed. 1978).

The claimant has mistaken her remedy and for this defect this court should not grant relief. To do so is to upset the predicates for equitable remedial devices. Henceforth, any claimant, without regard to the circumstances, may maintain, "I paid for it. It's mine."

I would reverse the order of the trial court and remand for appropriate partition proceedings.