# In the
# United States Court of Appeals
## For the Seventh Circuit
————————

No. 07-1995

HONG KONG ELECTRO-CHEMICAL WORKS, LTD.,

*Plaintiff-Appellant,*

*v.*

GARRY LESS, *et al.*,

*Defendants-Appellees.*

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 3582—**Samuel Der-Yeghiayan**, *Judge.*

————————

ARGUED JANUARY 16, 2008—DECIDED AUGUST 27, 2008

————————

Before MANION, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* This appeal is part of a long effort by Hong Kong Electro-Chemical Works, Ltd. ("HKEW") to get paid for goods that it sold to defendant Garry Less and a business he and his wife Michelle ran under the name Todd Industries. (We refer to them all as Less, unless the context requires otherwise.) The district court found that Less owes HKEW $166,252.88 plus interest. Less did not pay, leading HKEW to search for assets that would satisfy

its judgment. The dispute here centers on a house that Less and his family occupied and arguably owned. The district court rejected HKEW's claim that a 2002 conveyance of that house to Michelle Less's mother, Charlene Werner, and a later 2006 conveyance of the same house to Roth Holdings, LLC, were fraudulent transfers and were voidable under the Illinois Uniform Fraudulent Transfer Act (IUFTA), 740 ILCS 160/1 *et seq.* We reverse.

# I

Garry Less earned a significant sum of money in 1988 as a commodities trader. He failed, however, to set aside enough money to pay his taxes, and as 1989 opened, his luck ran out. Less wound up with tax debts he could not pay, liens imposed by the IRS, and a young family to support. During this period, Less refrained from purchasing a house in his own name. Instead, Less and his wife Michelle entered into an agreement with Werner, under which Werner would purchase a house for the Lesses to live in and the Lesses would cover the mortgage payments. This led to the 2002 conveyance at issue here. In that year, Werner purchased from Scott Warren (an unrelated third party) a house in Riverwoods, Illinois, that Garry picked out. The Lesses moved in and made the mortgage payments for the next few years.

In the meantime, Less went into business as an importer of frying pan handles. He conducted this business through Todd Industries, a corporation wholly owned by Michelle. In July 2000 the corporation was dissolved by the Illinois Secretary of State for failure to file an annual report and

pay statutory fees. After dissolution, Less nonetheless entered into a contract supposedly on behalf of Todd Industries to purchase frying pan handles from HKEW; in that agreement, he misrepresented the legal status of Todd Industries. After receiving the wares, neither Less nor Todd Industries paid for them. In June 2005 HKEW (relying on diversity jurisdiction) filed a breach of contract claim against Less, Michelle, and Todd Industries to recover $166,252.88.

While that suit was pending, Less made arrangements for the Riverwoods house to be sold to his lawyer, Mitchell Roth. Roth purchased the house through his wholly-owned corporation, Roth Holdings, LLC. (When appropriate, we refer to them collectively as "Roth.") Mitchell Roth is, according to Less, a very old and close friend of Less, as well as the registered agent for Todd Industries. Roth's law firm was handling the litigation with HKEW for Less. A central condition of the sale of the house was that the Less family be permitted to remain on the premises. (In looking for a buyer who was amenable to this arrangement, Less also approached the accounting firm that handled his taxes and another party whose relationship to Less is uncertain; both declined.) In 2006, Less signed the sale contract as "attorney-in-fact" for Werner. (This is the transaction referred to in these proceedings as the 2006 conveyance.) Less also signed the lease from Roth to the Lesses, which required the Lesses to pay all mortgage, tax, and other expenses of the property and gave them an option to buy the property within a year. Notably, in the meantime the IRS liens had been extinguished by operation of law; this meant that Less could once again own

property without worrying that the IRS would seize it in satisfaction of his debt for the 1988 taxes. As of the time the district court awarded summary judgment to HKEW for the full amount of $166,252.88, making HKEW a judgment-creditor of the Lesses, the Riverwoods house had been conveyed to Roth.

HKEW filed a motion in the district court to void the 2006 conveyance to Roth as a fraudulent effort on Less's part to avoid creditors. It also asked the court to set aside the 2002 conveyance in which Werner purchased the Riverwoods house, although a closer look at the motion shows that it was really a request to reform the 2002 title and to establish a constructive trust that recognizes Less as the true purchaser and that allows HKEW to reach the property to satisfy its judgment. The district court denied the motion, and HKEW now appeals.

## II

We review the district court's legal conclusions *de novo*, and its findings of fact for clear error. Here, the primary legal issues concern what rule to apply for evaluating resulting trusts, constructive trusts, and fraudulent conveyances. The facts are largely uncontested. Illinois law governs in this diversity suit.

The first issue for us is whether the district court erred in finding that the Lesses did not have any ownership interest in the Riverwoods house at any point. HKEW recognizes that Less avoided taking legal title to the house, but it argues that he had an equitable interest in it that it is entitled to reach. The district court had this to say:

> HKEW has not pointed to any evidence that indicates that the Less Defendants ever had any legal or *equitable* interest in the House, either in whole or in part. The parties agree that Werner purchased the House from Warren. However, HKEW has not pointed to any connection between the Less Defendants and Warren. Nor has HKEW shown that the Less Defendants *gave any money to Werner for the purchase* of the House. Thus, the undisputed facts show that the 2002 Conveyance did not involve a transfer of any interest to or from the Less Defendants.

(Emphasis added.)

The district court seems to have been assuming that, under Illinois law, an equitable interest (such as a beneficiary's interest via a resulting trust) cannot arise unless the party who enjoys the beneficial interest in the house and who pays the mortgage also contributed some of the up-front money toward the purchase of the house. As we explain below, this is not the case, and any decision based on that assumption cannot stand. Moreover, the italicized language in the preceding quote demonstrates that Roth is incorrect when it argues that HKEW waived the resulting-trust argument by failing to raise it below. The district court's language leaves no doubt that it considered the question whether Less had an equitable interest in the house. The resulting-trust argument has not been waived, and this court may review the district court's resolution of this claim.

"[A] resulting trust [arises] wherever the circumstances surrounding the disposition of property raise an inference, not rebutted, that the transferor does not intend that the

person taking or holding the property . . . should have the beneficial interest therein." *Kaibab Indus., Inc. v. Family Ready Homes, Inc.*, 444 N.E.2d 1119, 1126 (Ill. App. Ct. 1983) (omission in original). A resulting trust "comes into being at the instant the title vests or not at all." *Suwalski v. Suwalski*, 240 N.E.2d 677, 679 (Ill. 1968). Nevertheless, "[u]nder *Wright*, *Suwalski*, and *West*, the supreme court has examined the conduct of the parties *subsequent* to the questioned conveyance to determine the intent of the parties *at the time of* the conveyance." *Key v. Key*, 443 N.E.2d 812, 816 (Ill. App. Ct. 1982) (emphasis added). "[T]he burden of proof rests upon the party seeking to establish a resulting trust, and the evidence to be effective for this purpose must be clear, convincing, unequivocal, and unmistakable." *Kaibab*, 444 N.E.2d at 1126. The "crucial element in creating a resulting trust is 'intent'" and "such intent can be proved by surrounding circumstances, but such proof must be clear and convincing." *Id.* at 1126. Applying those principles to this case, the district court should have conducted an analysis of the circumstances before, during, and after the 2002 conveyance to ascertain the intent of the parties, rather than relying on the single indicium of up-front payment of purchase price.

Illinois courts have found resulting trusts in a variety of circumstances. See *Key*, 443 N.E.2d at 816 (finding resulting trust in favor of a father where the conveyance was in the names of his two sons but the father paid part of the down payment and made all payments toward principal and interest on the mortgage indebtedness, as well as payments for repairs, insurance, and taxes, and received the crops from the land). See also *Suwalski*, 240 N.E.2d at 679 (reversing appellate court and holding that a resulting

trust, rather than a co-tenancy, was created in favor of the parents where the son fronted $1,500 toward purchase price of property and co-signed for the loan but paid none of the mortgage payments, taxes, insurance premiums, or costs of repairs and improvements, all of which were paid by the father and mother).

In *Wright v. Wright*, 118 N.E.2d 280, 281-82 (Ill. 1954),

> plaintiff requested defendant to apply for a "G.I. loan" to assist her in raising the purchase price. . . . Plaintiff said that she would pay the mortgage debt. . . . Plaintiff testified that at the time of the transaction defendant said: "I don't want the property because it is in my name only and you will have to pay for it, Mother, because I don't want it."

The *Wright* court found that "[t]itle was taken in the son's name for the convenience of his mother and for her sole benefit." *Id.* at 283-84 (reversing trial court and holding that plaintiff established a resulting trust, where plaintiff paid no part of the purchase price of the house but did pay $206 up front for the painting of the house, as mandated by the sale contract, and paid the monthly mortgage payments).

The identity of the parties to the transaction in question is also relevant under Illinois law. In *Kaibab*, the court observed that the purchaser in a suspect conveyance "was a business associate and friend of the judgment debtor. Evidence further discloses that [the judgment debtor] and his wife resided in the premises . . . probably continuously from sometime in the 1950's"—that is, both before and after the transfer of title from the judgment debtor to the

friend-purchaser. 444 N.E.2d at 1126. The purchaser was "a crony of the judgment debtor. . . . Throughout the years, the property was titled in a mother-in-law, son and friend of the judgment debtor." *Id.* at 1127 (reversing trial court and holding that a resulting trust was created in favor of the judgment debtor, thus allowing the judgment creditor to reach the property that the judgment debtor had conveyed to the crony).

The district court in this case noted that "Werner also had a personal incentive to allow the Less Defendants to reside in the House since it would assist her daughter with housing and it would allow her grandchildren to remain in the same school district." As HKEW points out, however, this "personal incentive" is not a personal benefit; it is instead a willingness to accept a detriment (liability to pay for the house), and is highly consistent with an intent to create a resulting trust for the benefit of Werner's daughter and son-in-law, the Lesses.

The court also stated that "HKEW has not shown that the rent payments made to Werner provided the Less Defendants with anything other than temporary housing from month to month." The circumstantial evidence shows otherwise. The Lesses admit that they went shopping for a house, found one they liked, arranged for Michelle's mother to purchase it because Less allegedly could not obtain credit, and promised to "pay rent in the form of mortgage payments." In addition, although Roth repeatedly claims that Werner was responsible for paying the property taxes (presumably to show that she shouldered the responsibilities of ownership), there is reason to believe

that this is not true either. Werner technically owned the house for three and a half years, and she was three years behind on the property taxes. When it came time to sell (whether because a creditor's judgment loomed on the horizon or because the Lesses could no longer afford to make the mortgage payments), it was Less who scouted out a (crony) buyer and negotiated and signed the sale contract as "attorney-in-fact" for Werner. This is compelling evidence that Less was the true owner but the paperwork had to be done in Werner's name. The circumstances of the Roth-Less "lease" lend additional weight to the inference that Less intended all along to act as the true owner of the Riverwoods house: he agreed to pay all mortgage, tax, insurance, maintenance, and other ownership expenses of the property, and he obtained a right-to-purchase clause in the lease.

HKEW has presented compelling evidence of a resulting trust in favor of the Lesses. The district court failed to evaluate this evidence in accordance with the standards established by Illinois law. Instead, it used an inappropriately narrow legal standard when it should have evaluated Less's intent by examining all the circumstances.

Before leaving this topic, we add a word about the kind of equitable interest Less may have had. In briefing this case, the parties referred interchangeably to an equitable interest and to both constructive and resulting trusts. The doctrine of resulting trust recognizes and gives effect to the actual mutual intent of the parties. By contrast, the doctrine of constructive trust is an equitable remedy based on fairness. A court may impose a constructive trust on

property acquired through fraud or theft, with the victim as beneficiary, even though the defrauding party certainly did not intend such an outcome.

Although in the end it does not matter much for HKEW whether we proceed under the law of resulting trusts or constructive trusts, it seems to us that the 2002 transaction is better approached under the theory of resulting trusts. The evidence suggests that both Werner and the Lesses actually intended, at the time the Riverwoods house was purchased by Werner, that the Lesses enjoy the beneficial interest in the property. The theory of constructive trusts becomes more applicable for the potentially fraudulent 2006 transaction. We need not dwell on which judicially created remedy is better suited to this case, however, because in IUFTA Illinois has enacted a statute to address specifically the fraudulent transfer of property with intent to evade creditors. We therefore turn to the other principal question on appeal, whether Less fraudulently transferred his interest in the Riverwoods house (whether a resulting trust or a constructive trust) in 2006 when it was conveyed to Roth.

### III

IUFTA, 740 ILCS 160/1 *et seq.*, establishes that a debtor's transfer of an asset before or after a creditor's claim arose is fraudulent if the transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor . . . ." 740 ILCS 160/5(a). In determining whether a transfer was made with "actual intent," courts should consider the following factors:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all of the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b).

The district court held that, even supposing that Less possessed an ownership interest in the Riverwoods

house, there are insufficient indicia pointing to fraudulent intent in the 2006 conveyance. In support, it noted that "the Less Defendants make rent payments to" Roth, that "HKEW has not shown that the [2006 purchase] price of [$590,000] was unreasonable in light of factors such as unpaid real estate taxes," and (conclusorily) that "no evidence has been presented of wrongdoing on the part of Werner, [Roth], or the Less Defendants."

This analysis is inadequate. Essentially, the district court addressed only factor (8). It apparently did not consider the other factors, for if it had it would surely have noticed how many point to fraud. (1) Roth, the transferee, was an insider; (2) the Lesses retained possession of the property after the transfer; (3) there is some evidence that the transfer was concealed because the Lesses were evasive to HKEW about their home address, possibly to avoid inquiry into the history of their relation to the Riverwoods property; (4) before the transfer was made, the Lesses had been sued by HKEW; (5) the transfer was of substantially all of the Lesses' assets; (7) there is evidence of concealment of assets: in highly evasive testimony, Less acknowledges that he told the HKEW attorney that he had no money and later admitted that he paid his expenses out of a drawer full of cash and that "I've had cash that I've kept on the side"; (9) the Lesses were allegedly insolvent (though it is hard to tell how the cash drawer figures into this); and (10) the transfer occurred shortly before summary judgment was entered against the Lesses in an amount exceeding $160,000. The district court erred by failing to conduct the thorough inquiry required by IUFTA to determine whether the transfer was fraudulent.

**IV**

HKEW has shown that it is entitled to one more chance to show that the Riverwoods house should be treated as an asset belonging to Less and that it may reach that asset in satisfaction of its debt. We REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion. On remand, Circuit Rule 36 shall apply.